**Affirmed as Modified in Part; Reversed and Remanded in Part; and Substitute Opinion filed May 17, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00126-CV

---

**KEVIN T. MORTON, Appellant**

**V.**

**HUNG NGUYEN AND CAROL S. NGUYEN, Appellees**

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2009-74209**

---

## S U B S T I T U T E   O P I N I O N

The opinion of March 22, 2012, is withdrawn and this opinion is substituted in its place.

Appellant Kevin T. Morton entered into a contract for deed to sell his house to appellees Hung and Carol S. Nguyen. After the Nguyens rescinded the contract pursuant to the Texas Property Code, Morton sued the Nguyens for breach of contract. The Nguyens counterclaimed, seeking (1) a finding that the cancellation and rescission was proper under the Texas Property Code and a refund of all payments made under the

contract; (2) liquidated damages for alleged violations of the Texas Property Code; (3) damages "as the statutory remedy" for alleged violations of Texas Finance Code; (4) mental anguish damages; (5) treble economic damages and mental anguish damages for alleged knowing and intentional violations of the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA); (6) attorney's fees and costs; and (7) pre- and post-judgment interest. Following a bench trial, the trial court signed a judgment granting some but not all relief requested by the Nguyens. All parties appealed.

## BACKGROUND

Morton, a senior mortgage loan officer, entered into a contract for deed in January 2007 to sell the Nguyens a house at 8215 Silver Shadows in Spring, Texas.[1] Under the contract, the Nguyens agreed to make monthly payments to Morton in the amount of $1,533.90 for approximately 35 years before obtaining the deed to the property. Morton agreed to continue making payments on his existing mortgage on the property, and the Nguyens agreed to pay for home insurance, taxes, and homeowners' association fees. The Nguyens agreed that their payments to Morton for the first nine years of the contract term would be interest-only payments. The Nguyens' interest rate of 8.875% was scheduled to increase after the fifth anniversary of the sale by 1% each year until it reached 12.875%, purportedly to encourage the Nguyens to obtain outside financing and pay Morton the balance of principal owed on the contract for deed. Carol Nguyen testified that Morton assured the Nguyens, who were working to improve their credit following a recent bankruptcy and foreclosure, that they would be able to obtain financing successfully after two years. Carol testified that she and her husband made payments to Morton for almost three years until October 2009 when Carol learned that she and her husband still would not be eligible for outside financing at that time.

---

[1] "A contract for deed, unlike a mortgage, allows the seller to retain title to the property until the purchaser has paid for the property in full." *Flores v. Millenium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005). Such sales are regulated under subchapter D of chapter 5 of the Texas Property Code. *Id.*; *see* TEX. PROP. CODE ANN. §§ 5.061–5.085 (West 2004 & Supp. 2011) (subchapter applicable to "executory contract[s] for conveyance").

2

The Nguyens informed Morton through their attorney on November 2, 2009, of their intention to exercise their statutory right under the Texas Property Code to cancel and rescind the contract for deed on November 30, 2009. The Nguyens thereafter stopped making payments, and Morton ordered them out of the home. Before the Nguyens vacated, Carol testified that Morton sent her profane and offensive emails on a daily basis demanding payment under the contract. She also testified that Morton placed an unauthorized inquiry on the credit reports belonging to herself and her husband, and that Morton put notices about the dispute in the mailboxes of the Nguyens' neighbors. She testified that Morton had a key to the house, and his harassing communications made the Nguyens anxious and afraid to leave their home. The Nguyens moved out of the home in November 2009.

Morton sued the Nguyens for breach of contract. The Nguyens counterclaimed, seeking various forms of relief. First, the Nguyens requested a finding that their cancellation and rescission of the contract for deed was proper based on Morton's failure to comply with numerous Texas Property Code provisions concerning, among other things: (1) mandatory disclosures about the property; (2) written notice regarding the Nguyens' rights under a contract for deed; and (3) a prohibition against a seller entering into such contracts with an existing mortgage lien on the property. *See* TEX. PROP. CODE ANN. §§ 5.069, 5.070, 5.072, 5.085. A violation of these provisions entitles the purchaser to "cancel and rescind" the contract and receive a full refund of all payments made to the seller, including reimbursement for taxes paid and improvements made to the property if the seller violates the latter restriction. *See id*. §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2), 5.085(c)(2).[2]

A violation of these Texas Property Code provisions also constitutes a false, misleading, or deceptive act or practice under the DTPA, for which damages and

---

[2] Alternatively, the Nguyens argued that the contract for deed properly was rescinded because Morton induced them to enter the contract by committing statutory fraud, and that the Nguyens are entitled to restitution in the form of a refund of all payments made under the contract for deed. The trial court found that Morton committed statutory fraud, but awarded no damages based on that finding.

3

attorney's fees and costs may be sought. *See id*. §§ 5.069(d)(1), 5.070(b)(1), 5.072(e)(1), 5.085(c)(1); *see also* TEX. BUS. & COM. CODE ANN. § 17.50(a), (b), (d) (West 2011). The Nguyens alleged that Morton's violations of the Texas Property Code were knowing or intentional, and that the Nguyens therefore are entitled to mental anguish damages and either treble economic damages or treble economic and mental anguish damages under the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1).

Additionally, the Nguyens sought liquidated damages for Morton's failure to comply with mandatory annual accounting statement requirements under Texas Property Code section 5.077, which requires the seller to provide an accounting statement with specific information regarding the current financial status of the parties' contractual relationship not later than January 31 of each year. *See* TEX. PROP. CODE ANN. § 5.077. Failure to timely comply entitles the purchaser to "$250 a day for each day . . . that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property," and reasonable attorney's fees. *See id*. § 5.077(d).

The Nguyens also argued that Morton's alleged post-rescission conduct violates the prohibition against the use of threats, coercion, and harassment in debt collection under Texas Finance Code sections 392.301 and 392.302, and entitles the Nguyens to damages "as the statutory remedy." *See* TEX. FIN. CODE ANN. §§ 392.301–.302, 392.403–404 (West 2006). A violation of these provisions also constitutes a false, misleading, or deceptive act or practice under the DTPA, for which damages and attorney's fees and costs may be sought. *See id*.; *see also* TEX. BUS. & COM. CODE ANN. § 17.50(a), (b), (d). The Nguyens alleged that Morton's violations of the Texas Finance Code were knowing or intentional, and that the Nguyens therefore are entitled to mental anguish damages and either treble economic damages or treble economic and mental anguish damages under the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1).

After a bench trial, the trial court entered findings of fact and conclusions of law and signed a final judgment on November 19, 2010, awarding the Nguyens the following relief:

4

1. $63,693.47 in actual damages based on the Nguyens' proper cancellation and rescission of the contract for deed under the Texas Property Code. The trial court's findings of fact indicate that this amount represents the sum of the Nguyens' down payment, monthly payments, improvements and repairs, insurance premiums, and taxes paid, less the amount of unpaid monthly payments for November and December 2009;

2. $160,000 in liquidated damages for violations of the Texas Property Code requirement regarding annual accounting statements;

3. $10,000 in mental anguish damages;

4. $300 "as the statutory remedy" for violations of Texas Finance Code provisions regarding fair debt collection practices;

5. $67,020 in reasonable and necessary attorney's fees and $696.74 in costs, plus additional attorney's fees if Morton appeals; and

6. Post-judgment interest accruing at the rate of 5% per annum.

Morton appeals, arguing in eighteen issues that (1) the trial court should have concluded that Morton complied with the Texas Property Code based on a good-faith standard; (2) the trial court erred by awarding the Nguyens the equitable relief of rescission and restitution under the Texas Property Code because they did not return the value of possession of the property, and because the doctrines of quasi-estoppel and laches apply to bar such relief; and (3) the trial court erred by awarding damages for improvements and repairs, damages for violations of Texas Finance Code provisions regarding fair debt collection practices, damages for mental anguish, and attorney's fees.[3]

The Nguyens raise two issues on cross-appeal, arguing that the trial court abused its discretion by (1) failing to award pre-judgment interest in the final judgment, despite its finding that the Nguyens were entitled to such interest; and (2) concluding that certain

---

[3] Morton also argues in Issue 9 that the trial court erred by finding that Morton committed statutory fraud. Because the trial court failed to award any damages for statutory fraud, and because we affirm the trial court's award of damages based on alternative grounds for cancellation and rescission under the Texas Property Code, we overrule this issue without further analysis. *See supra*, note 2, and *infra*, Part I.B. Morton argues in Issue 17 that the trial court should have found the Nguyens liable for breaching the contract for deed. Because we conclude that the trial court properly found that the Nguyens were entitled to cancel and rescind the contract for deed based on Morton's violations of the Texas Property Code, *see infra*, Part I.B., we also overrule this issue without further analysis.

violations of the Texas Property Code and Texas Finance Code do not also entitle the Nguyens to relief under the DTPA, and in failing to award any damages under the DTPA for Morton's knowing or intentional violations of these statutes.

**MORTON'S ISSUES ON APPEAL**

### I. *Flores* and the Good-Faith Standard

Morton argues in Issues 1–3 that the good-faith standard for compliance articulated in *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427 (Tex. 2005), applies to his alleged violations of the Texas Property Code. Morton urges that because he did not violate the Texas Property Code under this standard, the Nguyens therefore are not entitled to (1) recover liquidated damages under section 5.077; or (2) cancel and rescind the contract for deed and recoup their payments under sections 5.069, 5.070, 5.072, and 5.085.

### A. *Flores* and Section 5.077

Morton argues in Issue 1 that he complied with Texas Property Code section 5.077 according to the *Flores* good-faith standard, in that he sent the Nguyens an annual statement before January 31 each year that included some but not all of the information required by section 5.077.

Section 5.077 states, in relevant part:

(a) The seller shall provide the purchaser with an annual statement in January of each year for the term of the executory contract. If the seller mails the statement to the purchaser, the statement must be postmarked not later than January 31.

(b) The statement must include the following information:

(1) the amount paid under the contract;

(2) the remaining amount owed under the contract;

(3) the number of payments remaining under the contract;

. . . .

(5) the amounts paid to insure the property on the purchaser's behalf if collected by the seller[.]

6

TEX. PROP. CODE ANN. § 5.077.[4]  A seller who conducts two or more transactions in a 12-month period under this section[5] and "fails to comply with Subsection 5.077(a)" is liable to the purchaser for (1) liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property; and (2) reasonable attorney's fees.  *Id*. § 5.077(d).

The Texas Supreme Court in *Flores* answered a number of questions regarding this section, including the question of whether a timely (under section 5.077(a)) but incomplete (under section 5.077(b)) annual accounting statement triggers the liquidated damages penalty.  *See Flores*, 185 S.W.3d at 428 (answering certified questions from the Fifth Circuit).  The court first considered whether the statute was compensatory or penal in nature, noting that the then-current version of section 5.077 could yield liquidated damages "in excess of five times the value of the underlying properties," and that such damages could be awarded even when they bear "no relation to the harm caused by a late or incomplete annual statement."  *Id*. at 432–33.  Based on these characteristics, the court concluded that the statute was penal in nature and therefore subject to strict statutory construction.  *Id*. at 433.

The court strictly construed the statute to conclude that "[b]y tying the statutory penalty to timely delivery of the annual statement, but not its contents, the Legislature's apparent purpose was to provide the purchaser with certain annual information about the parties' executory contract and to incite further inquiry if some of that information was missing or incomplete."  *Id*.  The court held that a timely but incomplete statement therefore "does not, strictly speaking, trigger an award of 'liquidated damages'" under the

---

[4] Section 5.077(b) also requires the seller to give the purchaser (1) information regarding the amounts paid to taxing authorities on the purchaser's behalf if collected by the seller; (2) if the property has been damaged and the seller has received insurance proceeds, an accounting of the proceeds applied to the property; and (3) if the seller has changed insurance coverage, a legible copy of the current policy, binder, or other evidence that satisfies the requirements of section 5.070(a)(2).  TEX. PROP. CODE ANN. §§ 5.077(b)(4), (b)(6), (b)(7).  The parties do not dispute that these sections are inapplicable to this case.

[5] Morton does not dispute that he conducted two or more transactions in a 12-month period under this section.

statute, and that such a statement does not "fail to comply" with section 5.077(a) unless it is "so deficient as to be something other than a good faith attempt by the seller to inform the purchaser of the current status of their contractual relationship." *Id.*

Although Morton claims that he was ignorant of the Texas Property Code requirements when he entered into the contract for deed,[6] he sent the Nguyens an annual "Mortgage Interest Statement" before January 31 of each year that included the amount of interest paid on the loan the previous year (which also constitutes the entire amount paid on the loan the previous year, but not the total amount paid on the contract); and the principal balance remaining on the loan. Morton concedes that he failed to include a statement regarding (1) the number of payments remaining under the contract, and (2) the amounts paid to insure the property on the Nguyens' behalf, although he argues that he nonetheless provided this information throughout the year as the premiums became due on a quarterly basis.

The trial court (1) found that Morton "failed to comply" with section 5.077; (2) held the *Flores* case "inapplicable" as a matter of law; and (3) awarded liquidated damages in the amount of $160,000. Morton argues that the trial court incorrectly declined to apply *Flores* to this case, and that the information contained in Morton's "Mortgage Interest Statements" meets the good-faith standard under *Flores* and precludes the Nguyens' claim for liquidated damages.

In response to Morton's argument that the *Flores* good-faith standard applies, the Nguyens contend that Morton cannot claim ignorance of the law on one hand, and good-faith, substantial compliance with the law in the other. However, *Flores* requires only "a good faith attempt by the seller to inform the purchaser of the current status of their contractual relationship," not a good-faith attempt to comply with the statute.[7] *Id.* The

---

[6] We note that the trial court found that Morton "was aware of Chapter 5 of the Texas Property Code and his obligations under the statute."

[7] In his brief on appeal, Morton incorrectly states that "substantial compliance in good faith" with the statute—a phrase that does not appear in *Flores*—is a "defense" to the Nguyens' claim for liquidated damages. However, he also recites the correct *Flores* good-faith standard and properly argues that he

purchasers in *Flores* received incomplete annual accounting statements because the company hired by the seller to service the seller's financial transactions "was apparently unaware" of the requirements of section 5.077, and sent the purchasers "the same statements it typically used to service traditional mortgages loans." *Id.* The company's ignorance of the law did not prevent the seller from benefitting from the good-faith standard, and the court did not address whether the seller itself knew or did not know of the statutory requirements. We see no reason why Morton's asserted ignorance necessarily precludes the application of the good-faith standard, or why his knowledge of the statute *in this context* is relevant to the issue of whether he made a "good faith attempt to inform the purchaser of the current status of the contractual relationship."

The Nguyens also argue that the *Flores* good-faith standard (1) no longer is necessary in light of the fact that the Legislature amended section 5.077 after *Flores* to cap the amount of liquidated damages a claimant can seek at the fair-market value of the property; and (2) should not apply in the event that actual damages are awarded.

As discussed above, the *Flores* court concluded that section 5.077 must be strictly construed as a penal statute, in part, because (1) a liquidated damages award under the then-current statute potentially could exceed the value of the underlying property, and (2) the statute does not require such damages to bear any relation to (or even be accompanied by) actual damages or harm. The Nguyens argue that the good-faith standard was designed to mitigate these "concerns," and that it does not "make sense" to apply the good-faith standard to a case in which these "concerns" are not present. The Nguyens' arguments fail for two reasons.

First, *Flores* does not purport to alleviate any "concerns" with respect to the good-faith standard. The court discusses these punitive characteristics only to determine whether to strictly construe section 5.077 as a penal statute. *Id.* *Flores* in no way indicates that the good-faith standard may be held inapplicable or unnecessary on a case-

should benefit from that standard for the same reasons stated in *Flores*.

by-case basis, depending on whether a particular liquidated damages award (1) does not exceed the value of the underlying property, or (2) is accompanied by an award of actual damages.

Second, with respect to the potential for an unlimited liquidated damages award under the then-current version of the statute, the *Flores* court expressly noted that its determination regarding the punitive nature of section 5.077 did not depend solely upon this consideration. *See id.* ("We have found statutory damage schemes far less draconian than this one to be penal in nature."). The cap on liquidated damages awards does not necessarily render the *Flores* good-faith standard obsolete. Liquidated damages still may be awarded in the absence or in excess of actual damages under the statute, an important consideration supporting a determination that the post-amendment statute remains penal in nature. *See id.* (citing *Johnson v. Rolls*, 79 S.W. 513, 514 (Tex. 1904) (statutory liquidated damages awarded without reference to any actual loss or injury have "much the character of exemplary or punitive damages"), *and Houston & Tex. Cent. Ry. Co. v. H.W. Harry & Bros.*, 63 Tex. 256, 260 (1885) (to the extent that an award of statutory damage exceeds the amount necessary to compensate plaintiff's injury, "the excess is but exemplary damage")). We conclude that the *Flores* good-faith standard is effective and applicable to this case, and that the trial court erroneously concluded otherwise.

Because we reverse the trial court's legal conclusion that *Flores* does not apply, and because the trial court has not had an opportunity to determine whether Morton's statements are "so deficient as to be something other than a good faith attempt by the seller to inform the purchaser of the current state of their contractual relationship" under *Flores*, we must remand this issue to the trial court to consider in the first instance. *Cf. Flores v. Millennium Interests, Ltd.*, 390 F.3d 374, 376 (5th Cir. 2004) (in certifying questions to Texas Supreme Court, noting that federal district court had concluded that statements in question "were not so deficient that they constituted no statements at all"), *certified question answered*, 185 S.W.3d 427 (Tex. 2005).

10

Accordingly, we sustain Morton's Issue 1 and reverse the trial court's judgment on the issue of whether the Nguyens are entitled to $160,000 in liquidated damages for Morton's violations of section 5.077 of the Texas Property Code. We remand that issue to the trial court for proceedings consistent with this opinion and proceed with our consideration of the parties' remaining issues on appeal.

## B.  *Flores* and Sections 5.069, 5.070, 5.072, and 5.085

Morton argues in Issues 2 and 3 that the *Flores* good-faith standard for compliance also should apply to the Nguyens' grounds for cancellation and rescission under Texas Property Code sections 5.069, 5.070, 5.072, and 5.085. These sections pertain to, among other things: (1) mandatory disclosures about the property; (2) written notice regarding the Nguyens' rights under a contract for deed; and (3) a prohibition against a seller entering into such contracts with an existing mortgage lien on the property. *See* TEX. PROP. CODE ANN. §§ 5.069, 5.070, 5.072, 5.085. Morton relies on *Nguyen v. Yovan*, 317 S.W.3d 261, 273 (Tex. App.—Houston [1st Dist.] 2009, pet. denied), to argue that "[o]ne court of appeals has indicated that an attempt to comply in good faith is a defense" to a claim that a seller violated Texas Property Code provisions applicable to contracts for deed in addition to section 5.077.

In *Yovan*, the First Court of Appeals held that the trial court erroneously found a seller "made a good faith effort to abide by" Texas Property Code sections 5.063 and 5.064, which pertain to notices a seller must give in the event of a purchaser's default on a contract for deed. *Id.* at 272–73. Based on the fact that (1) the record contained no evidence of any such good faith effort, and (2) the parties did not dispute that the seller wholly failed to comply with the statute, the First Court of Appeals reversed the portion of the trial court's judgment denying the purchaser relief on that issue, and remanded it back to the trial court for further proceedings. *Id.* at 273. However, the court did not hold—and it was not necessary to its disposition to hold—that such an argument would be valid, even if it were supported by evidence.

11

Morton cites to no authority extending the good-faith standard to Texas Property Code sections other than section 5.077. Morton provides no other arguments for why we should extend *Flores* to these sections, which provide a bright-line rule for determining whether a purchaser is entitled to cancel and rescind a contract for deed. As we explain in more detail in the context of Morton's other issues below, the statutory remedy of cancellation and rescission is designed to provide special protection to purchasers entering into such contracts, which are disfavored under Texas law. The accessibility of the remedy potentially is jeopardized if every purchaser with legitimate grounds for cancellation and rescission must also expect to litigate the issue of whether the seller acted in good faith. Because we decline to extend the good-faith standard beyond Texas Property Code section 5.077, we overrule Morton's Issues 2 and 3.

## II. Equitable Limitations on and Defenses to Cancellation and Rescission

Morton argues in Issues 4–8 that the trial court erred by finding that the Nguyens properly cancelled and rescinded the contract for deed because (1) they did not return the value of possession of the property, which Morton argues is a pre-requisite to seeking cancellation and rescission under the Texas Property Code, and (2) the doctrines of quasi-estoppel and laches apply as affirmative defenses to bar such relief.

When construing a statute, we begin with its language. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen. *Id*. (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). If the statute is clear and unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids. *Id*. (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999)). We may consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction. *Id*. (citing TEX. GOV'T CODE ANN. § 311.023(1), (3), (5) (West 2005), and *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994)). Statutory construction is a question of law, and our

12

review accordingly is de novo. *Id.* (citing *In re Forlenza*, 140 S.W.3d 373, 376 (Tex. 2004)). With these standards in mind, we turn to Morton's arguments.

## A. Limitations on Cancellation and Rescission

"In equity, rescission allows for the forced termination of an agreement and the restoration of benefits or consideration previously transferred." *See Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 696 (Tex. App.—Austin 1989, no writ). At common law, a party seeking the equitable remedy of rescission must first satisfy several requirements, which include (1) giving timely notice to the seller that the contract is being rescinded; and (2) tendering or offering to tender the property received and the value of any benefit derived from its possession back to the seller. *Id.* (citing *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 836 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)). The party seeking equitable rescission bears the burden of proof on the issues of notice and tender. *Id.* (citing *Nix*, 681 S.W.2d at 836). Morton argues in Issue 4 that these common-law limitations implicitly are incorporated into the express statutory remedy of cancellation and rescission authorized under the Texas Property Code, and that the Nguyens are not entitled to cancellation and rescission because they failed to tender or offer to tender the value of their almost three-year possession of the property back to Morton.[8]

In support of this argument, Morton cites to a line of cases from the Fifth Court of Appeals analyzing the similar statutory remedy of "restoration of consideration" under the DTPA. These cases hold that the DTPA remedy of "restoration of consideration" is "a statutory recognition" of the equitable remedy of rescission and restitution, as well as the common-law limitation that the complaining party "surrender any benefits received" before electing to avoid the contract and "recover that [which] he parted with." *Smith v. Kinslow*, 598 S.W.2d 910, 915 (Tex. App.—Dallas 1980, no writ); *see also* TEX. BUS. &

---

[8] Chapter 5 contains no express limitation on a purchaser's ability to "cancel and rescind" a contract for deed and "receive a full refund of all payments made to the seller," among other things. *See* TEX. PROP. CODE ANN. §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2), 5.085(c)(2).

COM. CODE ANN. § 17.50(b)(3) ("In a suit filed under this section, each consumer who prevails may obtain . . . orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter."). In other words, the Fifth Court of Appeals has held that the statutory remedy of "restoration of consideration" under the DTPA incorporates the common-law notice and tender requirements applicable to the equitable remedy of rescission and restitution. *See, e.g.*, *Nix*, 681 S.W.2d at 835–36 (purchaser was not entitled to "restoration of consideration" under DTPA because limitation on remedy of rescission requires and record contained no evidence of "tender, or offer of tender" of value of benefits received from using the product approximately one month); *see also Chubb Lloyds Ins. Co. of Tex. v. Andrew's Restoration, Inc.*, 323 S.W.3d 564, 580–81 (Tex. App.—Dallas 2010, pet. granted) (consumer was not entitled to "restoration of consideration" under DTPA because consumer failed to show that he complied with prerequisite of surrendering benefits received from other parties), *aff'd in part, rev'd in part*, —S.W.3d—, No. 10-0995, 2012 WL 1370851 (Tex. Apr. 20, 2012). *Cf. Schenck v. Ebby Halliday Real Estate, Inc.*, 803 S.W.2d 361, 366–67 (Tex. App.—Tyler 1990, no writ) (jury's finding that consumer acted negligently or wrongfully constituted equitable bar to "restoration of consideration" under DTPA under equitable doctrine requiring claimant seeking equitable relief to have "unclean hands"). Morton argues that these cases from the Fifth Court of Appeals should guide our analysis of the similar statutory remedy of "cancellation and rescission" under subchapter D of chapter 5 of the Texas Property Code.

The Texas Supreme Court recently considered the position taken by the Fifth Court of Appeals and rejected it in *Cruz v. Andrews Restoration, Inc.*, —S.W.3d—, No. 10-0995, 2012 WL 1370851, at *7–8 (Tex. Apr. 20, 2012). Reiterating its prior holding from *Smith v. Baldwin*, 611 S.W.2d 611, 616–17 (Tex. 1980), in which the court stated that "[t]he DTPA does not represent a codification of the common law" and was intended "to provide consumers a cause of action for deceptive trade practices without the burden

14

of proof and numerous defenses encountered in a common law fraud or breach of warranty suit," the court held in *Cruz*: "[C]ompliance with [the] requirements [of notice and tender] is unnecessary under the DTPA. Instead, we adopt the Restatement approach and conclude that notice and restitution or a tender of restitution are not prerequisites to a remedy under [the DTPA] . . . ." *Cruz*, 2012 WL 1370851, at \*8. This holding weighs against a conclusion that the statutory remedy of cancellation and rescission under the Texas Property Code incorporates the same common-law limitations.

With respect to the history and purpose of subchapter D of chapter 5, the following explanation illuminates our discussion:

> In 1995, the Legislature amended chapter 5 of the Texas Property Code to address serious abuses in the acquisition of homes in the colonias. The colonias are substandard, generally impoverished, rural subdivisions that typically lack basic utilities and other infrastructure. Concentrated along the Texas border with Mexico, colonia residents almost always acquire residential lots through executory contracts called "contracts for deed" or "contracts for sale" . . . .

> The Legislature found that purchasers had little legal protection under the contract-for-deed financing arrangement and *no statutory right* to critical information about the colonia property being purchased. Sellers have sold individual lots to two or more purchasers, sold lots without written contracts, and placed liens on lots subsequent to the sale without informing the purchasers and colonia residents. Colonia residents also complain that sellers frequently misrepresent the availability of water, sewer service, and other utilities, and that the residents are often not informed when property being sold lies in a flood plain or is otherwise unsuitable for habitation.

> Although the Legislature considered a prohibition of contract-for-deed conveyances to end these abuses, it determined that many residents building homes in these areas need this method of financing because they do not have access to traditional mortgage financing. The contract-for-deed arrangement, however, allows low-income persons to purchase property and build homes on the property.

> To address the fraudulent and abusive conduct, the Legislature amended the statute in 2001, substantially increasing the monetary penalties and applying the protections statewide.

*Flores*, 185 S.W.3d at 434–35 (Wainwright, J., concurring) (emphasis added, citations

15

omitted). Subchapter D, therefore, provided new grounds to rescind a contract for deed that previously had been unavailable to purchasers at risk of being misled by incomplete disclosures regarding the nature of the purchased property. Accordingly, no common-law remedies were codified by the Legislature's enactment of subchapter D. In fact, to read the statute as incorporating common-law limitations into the statutory remedy would frustrate the very purpose of these sections, which were designed to "address the fraudulent and abusive conduct" of sellers. *See id.* at 435 (Wainwright, J., concurring). The Legislature could have included express limitations on the remedy of cancellation and rescission for these new grounds, but did not do so. We overrule Morton's Issue 4.[9]

## B. Equitable Defenses of Quasi-Estoppel and Laches

Morton argues in Issues 5–8 that the equitable defenses of quasi-estoppel and laches apply to the statutory remedy of cancellation and rescission, and that he established such defenses.

Common-law defenses may not be used to defeat claims brought under a statute that was not designed to be a codification of the common law. *See, e.g.*, *Smith*, 611 S.W.2d at 616 (DTPA not designed to be a codification of common law; DTPA was designed to "provide consumers a cause of action for deceptive practices without the

---

[9] Morton also argues in Issue 10 that the trial court erred by failing to award Morton a "set-off against the sums awarded to the Nguyens" for "the value the Nguyens received for their occupancy of the house for almost three years." In his opening brief on appeal, Morton cites three cases discussing the common-law, equitable relief of rescission but provides no analysis or argument linking that authority to the statutory remedy of cancellation and rescission under the Texas Property Code. *See Price v. Kittredge*, 361 S.W.2d 721, 723–24 (Tex. Civ. App.—Fort Worth 1962, no writ) (failure to offer or tender property and reasonable compensation for value received precluded equitable rescission of contract for deed); *Stinson v. Snead*, 163 S.W. 989 (Tex. Civ. App.—Amarillo 1914, no writ) (discussing election of remedies and effect of one party's possession of property on other party's relief in event of rescinded contract for deed; fact question remained on issue of rescission and directed verdict was improper); *Burwell v. Sollock*, 32 S.W. 844, 846 (Tex. Civ. App. 1895, no writ) (party entitled to value of other party's possession of land subject to annulled contract for deed). And unlike Morton's argument in support of Issue 4—in which he contends that the remedy of rescission and cancellation under the Texas Property Code must incorporate common-law requirements because the Fifth Court of Appeals has concluded that such requirements are incorporated into the similar remedy of "restoration of consideration" under the DTPA—Morton's opening brief does not draw a similar analogy in the context of requesting a "set-off" in Issue 10, and we do not consider the merits of such an argument. We overrule Morton's Issue 10.

burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit"); *Diversified, Inc. v. Gibraltar Sav. Ass'n*, 762 S.W.2d 620, 623 (Tex. App.—Houston [14th Dist.] 1988, writ denied) ("[I]t is well established that the DTPA was *not* designed to be a codification of the common law and any common law defenses may not be used to defeat a claim under it." (emphasis in original)); *Joseph v. PPG Indus., Inc.*, 674 S.W.2d 862, 865 (Tex. App.—Austin 1984, writ ref'd n.r.e.) (common-law defenses "cannot be used to defeat claims under the DTPA" because DTPA was not designed to codify common law); *see also Frank B. Hall & Co v. Beach, Inc.*, 733 S.W.2d 251, 264 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) (applying rule from *Smith* and *Joseph* to preclude common-law defenses to claims brought under Texas Insurance Code). We already have determined that the sections of the Texas Property Code at issue in this case do not constitute a codification of the common law.[10] Therefore, we conclude that these common-law defenses are not available to defeat claims under the statute, and we overrule Morton's Issues 4–8.[11]

## III.    Other Damages and Attorney's Fees

Morton argues in Issues 11–16 that the trial court erred by awarding the Nguyens recovery for (1) improvements and repairs, because there is no evidence to support such a finding; (2) "statutory damages" for violations of the Texas Finance Code, because there is no finding of fact regarding such violations and no evidence to support such a finding; (3) mental anguish damages, because there is no finding of fact regarding mental anguish, and the Nguyens are not entitled to such damages; and (4) attorney's fees, because the Nguyens failed to segregate between claims for which attorney's fees are or are not

---

[10] Morton relies on *Schenck*, 803 S.W.2d at 366–67, to argue that other courts recognize the applicability of common-law, equitable defenses to purely statutory claims. However, *Schenck* expressly recognized the prohibition of common-law defenses as against DTPA claims and concluded that the common-law doctrine of "unclean hands" was a permissible factor to consider in whether to afford the plaintiff her requested remedy. *Id.* at 367. *Schenck* does not stand for the proposition that common-law defenses are effective as against purely statutory claims.

[11] Morton argues in Issue 18 that, in the event that we conclude the Nguyens are not entitled to relief under the Texas Property Code, he is entitled to damages for the value of the Nguyens' last month of possession of the property. Based on our resolution of these issues, we overrule Morton's Issue 18.

recoverable.

### A.     Improvements and Repairs

Morton argues in Issue 11 that the Nguyens are not entitled to recovery for "improvements/repairs" made to the property because they failed to offer any proof that the costs of such improvements were reasonable.

A violation of Texas Property Code section 5.085 entitles the purchaser to cancel and rescind the contract for deed and receive from the seller, among other things, "the value of any improvements made to the property by the purchaser." *See* TEX. PROP. CODE ANN. § 5.085(c)(2)(B)(ii). The trial court's findings indicate that the Nguyens' actual damages award includes an award of $2,648 for "improvements/repairs."

Section 5.085 contains no express requirement that the measure of damages be based on the reasonable cost of such improvements. Morton cites *Allright, Inc. v. Lowe*, 500 S.W.2d 190 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ), in support of his assertion that section 5.085 imposes a reasonableness requirement onto a purchaser's ability to recover. *Allright, Inc.* concerns the common-law principle that to establish the right to recover the cost of repairs made to property wrongfully damaged by another, a claimant ordinarily must prove that such repairs were necessary and the costs reasonable. *See, e.g.*, *Allright, Inc.*, 500 S.W.2d at 191–92 (requiring evidence of reasonable cost of repairs, placement parts, towing, and storage to recover and restore appellee's car after it was stolen from a parking lot found to be negligently operated by appellant and recovered in a damaged condition); *see also Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 762–63 (Tex. App.—Fort Worth 1998, no pet.) (hotel owner failed to establish right to recover costs of repairs after explosion damaged hotel because hotel owner did not present sufficient evidence to justify jury's finding that costs were reasonable and repairs necessary). Morton does not explain on appeal why this rule should be incorporated into section 5.085.

By its plain language, the purchaser's right to receive the "value of improvements" under section 5.085 is designed to compensate the purchaser for value that is added by the purchaser to the property, regardless of the reason, and that is retained by the seller after the purchaser properly cancels and rescinds the contract for deed. Unlike circumstances in which a claimant must exercise reasonableness when making necessary repairs to wrongfully damaged property for which reimbursement will be sought against another party, the circumstances contemplated by section 5.085 involve a purchaser who spent his or her own money to improve property the purchaser contracted to own. As the statute measures the amount of recovery by the "value" rather than the "cost" of such improvements, we see no reason why the Nguyens should be required to present evidence of reasonable costs.

We overrule Morton's Issue 11.

### B. Violations of Texas Finance Code and Mental Anguish Damages

Morton argues in Issues 12 and 13 that the trial court erred by awarding $300 as "statutory damages" for violations of the Texas Finance Code based on Morton's alleged post-rescission conduct because there is no finding of fact regarding such violations and no evidence to support such a finding. Morton argues in Issues 14 and 15 that the trial court erred by awarding $10,000 as damages for mental anguish, based on the fact that there is no finding to support the related award of "statutory damages" under the Texas Finance Code, and because the Nguyens are not entitled to recovery under any other cause of action asserted that would support an award of mental anguish damages.

The trial court rejected by striking through the Nguyens' proposed finding of fact 28, which states that (1) Morton's post-rescission conduct "violate[s] Sections 392.301, 392.302, and 392.304 of the Texas Finance Code"; (2) "[b]ecause this is a tie-in statute with the [DTPA], [Morton] also violated the DTPA"; and (3) Morton's "violations harmed [the Nguyens] and proximately caused them mental anguish." In its conclusions of law, the trial court also rejected by striking through the Nguyens' proposed conclusion of law 20, which states that the Nguyens "are entitled to recover liquidated damages of

19

not less than $100" for each alleged violation of the Texas Finance Code.[12] In other words, the trial court refused to find that Morton violated the Texas Finance Code or that such alleged violations caused the Nguyens harm or mental anguish.[13]

Contrarily, the trial court accepted the Nguyens' proposed conclusion of law 18, which states that the Nguyens "are entitled to recover their actual damages, mental anguish, and pre- and post-judgment interest for [Morton's] violations of the Texas Finance Code." The trial court's final judgment awards the Nguyens $300 "as the statutory remedy for violations of [Chapter] 392 of the Texas Finance Code." Morton correctly asserts that these conclusions are not supported by findings of fact; in fact, such conclusions potentially conflict with the trial court's rejection of related findings.

We will not set aside a judgment because of conflicting findings of fact, by a judge or by a jury, if the conflict can be reconciled. *Hartford Ins. Co. v. Jiminez*, 814 S.W.2d 551, 552 (Tex. App.—Houston [1st Dist.] 1991, no writ). The same rule applies to conflicts between findings of fact and conclusions of law. *Id.* When two possible interpretations exist, the interpretation should be chosen that will harmonize the judgment with the findings of fact and conclusions of law upon which it is based. *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 841 (Tex. App.—Texarkana 1996, writ denied). The reviewing court must reconcile apparent conflicts if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *Anchor, Inc. v. Laguna Enters., Inc.*, No. 14-00-00283-CV, 2002 WL 287706, at *4 (Tex. App.—Houston [14th Dist.] Feb. 7, 2002, pet. denied) (not designated for publication) (citing *Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980)). We will not determine whether the findings reasonably may be viewed as conflicting; to

---

[12] This proposed conclusion of law did not expressly reference the Texas Finance Code, but it tracks the language of the statute with respect to certain civil remedies available thereunder and sought by the Nguyens with respect to Morton's post-rescission conduct.

[13] If the court omits an element of a ground of recovery that has been "requested," the court's action may suggest the omission was deliberate, rather than inadvertent. *Vickery v. Comm'n for Laywer Discipline*, 5 S.W.3d 241, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). "In other words, where the trial court has been specifically requested to make a particular finding in support of its judgment and fails to do so, the failure is tantamount to a refusal." *Id.*

20

the contrary, the question is whether there is any reasonable basis upon which the findings may be reconciled. *Bender*, 600 S.W.2d at 260.

The Nguyens urge on appeal that it is reasonable to assume that, because the trial court consistently concluded that none of Morton's violations of either the Texas Property Code or Texas Finance Code also constitute DTPA violations, the trial court struck proposed finding of fact 28 solely because it included a statement regarding a related DTPA violation. In other words, they argue that the trial court's refusal to accept the Nguyens' proposed finding of fact 28 "was clearly based upon the manner in which it was submitted"—in that it was submitted in conjunction with a statement regarding the DTPA—"rather than the court's determination that the evidence did not support a finding" that Morton violated the Texas Finance Code. However, the trial court performed numerous other limited strike-outs, eliminating objectionable statements and accepting others within a single paragraph containing multiple proposed findings. There is no reasonable explanation for why the trial court would not have done so here. Additionally, the Nguyens' argument is undermined by the fact that the trial court also struck proposed conclusion of law 20 regarding damages for alleged violations of the Texas Finance Code, which did not contain any objectionable references to the DTPA.

We conclude that the trial court found that Morton did not violate the Texas Finance Code, and that finding cannot reasonably be reconciled with the trial court's conclusion that the Nguyens are entitled to damages for Morton's alleged violation of the Texas Finance Code.

Where the trial court's findings of fact conflict with its conclusions of law, findings of facts will be deemed to control. *Cnty. of El Paso v. Ortega*, 847 S.W.2d 436, 441 (Tex. App.—El Paso 1993, no writ) (citing *Gary Safe Co. v. A.C. Andrews Co., Inc.*, 568 S.W.2d 166 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.)). Accordingly, the trial court's factual finding that Morton did not violate the Texas Finance Code controls over the trial court's determination that the Nguyens "are entitled to recover their actual damages, mental anguish, and pre- and post-judgment interest for [Morton's] violations

21

of the Texas Finance Code." "Statutory damages" and mental anguish damages based on these alleged violations were awarded in error.[14] To that extent, we sustain Morton's Issues 12, 13, and 14.[15] Accordingly, we modify the trial court's judgment to omit the paragraph awarding the Nguyens $300 "as the statutory remedy for violations of [Chapter] 392 of the Texas Finance Code."

Morton argues in Issue 15 that we should reverse the trial court's award of $10,000 in mental anguish damages because the Nguyens are not entitled to recovery under any other cause of action asserted that would support an award of mental anguish damages. Morton's argument hinges on his assertion that he violated neither the Texas Finance Code nor the Texas Property Code. Because we uphold the trial court's conclusion that Morton violated certain sections of the Texas Property Code, and because Morton does not argue that the trial court could not have awarded mental anguish damages in conjunction with such violations, we do not review whether the trial court properly could have done so. We overrule Morton's Issue 15.

## C.    Attorney's Fees

Morton argues in Issue 16 that the trial court erroneously awarded the Nguyens attorney's fees because they "failed to segregate the fees among the various causes of action asserted."

Because an award of attorney's fees must be authorized by statute or contract, a

---

[14] We note that we do not decide whether mental anguish damages would be permitted in connection with violations of the Texas Finance Code if such an award were supported by related findings of fact.

[15] The Nguyens argue that if the trial court failed to find that Morton's post-rescission conduct constituted a violation of the Texas Finance Code "section 392," then such failure was against the great weight and preponderance of evidence. Chapter 392 of the Texas Finance Code, entitled "Debt Collection" is comprised of fifteen different sections, six of which pertain to prohibited debt collection methods. *See* TEX. FIN. CODE ANN. §§ 392.001–.404. The sections pertaining to prohibited debt collection methods include lists of various specific prohibitions against, among other things (1) threats or coercion; (2) harassment or abuse; and (3) fraudulent, deceptive, or misleading representations. *See id.* §§ 392.301, 392.302, 39.304. Although the Nguyens summarize the evidence regarding Morton's alleged post-rescission conduct, they fail to tie any of the alleged conduct to specific prohibitions listed in the statute. Accordingly, we decline to hold that the trial court erred by rejecting the Nguyens' proposed finding of fact regarding alleged violations of the Texas Finance Code.

22

party presenting more than one claim in a single cause must segregate attorney's fees between claims for which attorney's fees are or are not recoverable. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). However, if no one objects to the fact that the attorney's fees are not segregated as to specific claims, the objection is waived. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (citing *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988)); *Pitts & Collard, L.L.P. v. Schechter*, —S.W.3d—, No. 01-08-00969-CV, 2011 WL 6938515, at *14 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, no pet. h.) (objection to request for attorney's fees "must be made before the trial court renders judgment"). Morton failed to object at the trial court that the Nguyens should be required to segregate their request for attorney's fees, and such failure waived this issue for appellate review. *See Red Rock Props. 2005, Ltd. v. Chase Home Fin., L.L.C.*, No. 14-08-00352-CV, 2009 WL 1795037, at *6–7 (Tex. App.—Houston [14th Dist.] June 25, 2009, no pet.) (mem. op.) (objection that attorney's fees were not segregated was not preserved in trial court); *Fortenberry v. Cavanaugh*, No. 03-07-00310-CV, 2008 WL 4997568, at *11–12 (Tex. App.—Austin Nov. 26, 2008, pet. denied) (mem. op.) (same); *see also* TEX. R. APP. P. 33.1(a)(1). We overrule Morton's Issue 16.

Having considered all of Morton's issues on appeal, we proceed to consider the Nguyens' two issues on cross-appeal.

## THE NGUYENS' ISSUES ON CROSS-APPEAL

The Nguyens argue in two issues on cross-appeal that the trial court abused its discretion in (1) failing to award pre-judgment interest, despite finding that the Nguyens are entitled to such interest; and (2) concluding that Morton's violations of the Texas Property Code do not also constitute DTPA violations, and that damages for knowing or intentional violations additionally should have been awarded under the DTPA.

## I. Pre-Judgment Interest

The Nguyens first argue that the trial court abused its discretion in failing to award

pre-judgment interest, despite finding that the Nguyens are entitled to such interest.

A complaint regarding the award of pre-judgment interest must be preserved in the trial court by a motion to amend or correct the judgment or by a motion for new trial. *See Keith v. Keith*, 221 S.W.3d 156, 173 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987) (per curiam) (error regarding award of pre-judgment interest must be preserved); *Miller v. Kendall*, 804 S.W.2d 933, 944 (Tex. App.—Houston [1st Dist.] 1990, no writ) (motion to amend or correct judgment or motion for new trial is proper vehicle for preserving error in judgment). The Nguyens failed to object to the trial court regarding the award of post- but not pre-judgment interest, and such failure waived this issue for appellate review. *See Keith*, 221 S.W.3d at 173; *see also* TEX. R. APP. P. 33.1(a)(1). We overrule the Nguyens' first issue on cross-appeal.

## II.    DTPA Tie-Ins

The Nguyens argue in their second issue on cross-appeal that (1) the trial court erred by concluding that Morton's violations of the Texas Property Code do not also constitute DTPA violations, and (2) the trial court should have awarded damages for knowing or intentional violations.[16]

Certain statutes "tie-in" to the DTPA, in that a violation of the "tie-in" statute constitutes "a false, misleading, or deceptive act or practice" under the DTPA. *See, e.g.*, TEX. PROP. CODE ANN. § 5.085(c)(1) ("A violation of this section . . . is a false, misleading or deceptive act or practice within the meaning of Section 17.46 [of the DTPA] and is actionable in a public or private suit" brought under the DTPA); TEX. BUS. & COM. CODE ANN. § 17.46 (West 2011) ("laundry list" of actionable false, misleading, or deceptive acts or practices). A consumer may maintain action under the DTPA where, among other things, the use or employment of a false, misleading, or deceptive act or

---

[16] The Nguyens also argue that the trial court erred by concluding that Morton's asserted violations of the Texas Finance Code do not also constitute DTPA violations. We already have concluded that the trial court found that Morton did not violate the Texas Finance Code. We therefore limit our analysis of the Nguyens' issue to the relevant Texas Property Code violations.

practice is relied upon by a consumer to a consumer's detriment and constitutes a producing cause of economic damages or damages for mental anguish. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a). The Nguyens argue that the trial court erroneously rejected by striking through the Nguyens' proposed conclusion of law 16, which states that "[a]ny violations of [Texas Property Code] Sections 5.069, 5.070, 5.072, and 5.085 are also violations of the DTPA."

We agree with the Nguyens that certain Texas Property Code violations found by the trial court constitute "a false, misleading, or deceptive act or practice" within the context of a DTPA claim. *See* TEX. PROP. CODE ANN. §§ 5.069, 5.070, 5.072, 5.085 (violation of these sections "is a false, misleading, or deceptive act or practice" within the context of a DTPA claim). To recover under the DTPA with respect to such acts or practices, a claimant must establish that: (1) she was a consumer of the defendant's goods or services; (2) the defendant committed false, misleading, or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of actual damages to the consumer. *Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155, 163 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 513 (Tex.1998)). Although a violation of the relevant sections of the Texas Property Code at issue in this case also constitutes a "false, misleading, or deceptive act or practice," the Nguyens do not address the other elements of a DTPA claim or cite any authority holding that Morton's Texas Property Code violations automatically entitle the Nguyens to relief under the DTPA. We overrule the Nguyens' second issue on cross-appeal.

## CONCLUSION

Having considered all the parties' issues on appeal, we (1) reverse the trial court's judgment on the issue of whether the Nguyens are entitled to $160,000 in liquidated damages for Morton's violations of section 5.077 of the Texas Property Code, and remand that issue to the trial court for proceedings consistent with this opinion; and (2) modify the trial court's judgment by deleting the paragraph awarding the Nguyens $300

25

"as the statutory remedy" for Morton's violations of the Texas Finance Code. We affirm the trial court's judgment as modified and in all other respects.


/s/     Sharon McCally
        Justice

Panel consists of Justices Brown, Boyce, and McCally.