# IN THE SUPREME COURT OF TEXAS

══════════
No. 12-0539
══════════

KEVIN T. MORTON, PETITIONER,

v.

HUNG NGUYEN AND CAROL S. NGUYEN, RESPONDENTS

══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
══════════════════════════════════════

JUSTICE GREEN delivered the opinion of the Court, in which CHIEF JUSTICE JEFFERSON, JUSTICE HECHT, JUSTICE JOHNSON, JUSTICE GUZMAN, and JUSTICE DEVINE joined.

JUSTICE BOYD filed a concurring and dissenting opinion, in which JUSTICE WILLETT and JUSTICE LEHRMANN joined.

Chapter 5, Subchapter D of the Texas Property Code imposes various conditions and disclosure requirements on sellers entering into contracts for deed—also known as "executory contracts for the conveyance of real property." *See* TEX. PROP. CODE §§ 5.061–.085. A seller's failure to comply with Subchapter D's requirements entitles a buyer to "cancel and rescind" a contract for deed and "receive a full refund of all payments made to the seller." *E.g., id.* § 5.069(d)(2). The primary issue in this case is whether a buyer who exercised the statutory right to cancel and rescind a contract for deed must restore to the seller all benefits the buyer received under the contract. We hold that Subchapter D's cancellation-and-rescission remedy contemplates

mutual restitution of benefits among the parties. Thus, we conclude that the buyers here must restore to the seller supplemental enrichment in the form of rent for the buyers' interim occupation of the property upon cancellation and rescission of the contract for deed. We reverse the court of appeals' judgment, in part, and remand the case to the trial court for proceedings consistent with this opinion.

## I. Background

In January 2007, Kevin Morton, as seller, and Hung and Carol Nguyen, as buyers, entered into a contract for deed. The contract required the Nguyens to make a $5,000 down payment and monthly installments of $1,533.90 for approximately thirty-five years before obtaining the deed. The contract provided for an initial interest rate of 8.875%. After five years, the interest rate was set to escalate yearly by 1% until it reached 12.875%. The transaction was purportedly structured to encourage the Nguyens to seek out a new financing arrangement in a few years after rebuilding their credit. The Nguyens also agreed to pay for homeowners' insurance, property taxes, and homeowners' association fees. The Nguyens made payments for almost three years. During this time, Morton sent the Nguyens an annual statement that reported the amount of interest paid each year and the balance remaining under the contract. However, Morton did not provide the Nguyens with all of the information in the annual statement required by section 5.077 of the Property Code. *See* TEX. PROP. CODE § 5.077(b) (providing that the annual statement must include, *inter alia*, the amount paid under the contract and the number of payments remaining under the contract).

In November 2009, the Nguyens notified Morton that they were exercising their statutory right to cancel and rescind the contract for deed. The Nguyens demanded return of all thirty-four monthly payments, the down payment, and the taxes and insurance premiums they paid during the

2

contract's term. Morton ordered the Nguyens out of the house and allegedly began to harass the Nguyens by demanding payments under the contract and demanding that they immediately vacate the property. Morton then sued the Nguyens for breach of contract. The Nguyens counterclaimed, seeking monetary damages, rescission, and statutory damages due to alleged violations under the Property Code, the Finance Code, and the Deceptive Trade Practices Act (DTPA). Morton asserted various affirmative defenses to the Nguyens' counterclaims and alleged that he was entitled to a setoff in the amount of the fair market rental value of the property for the time the Nguyens occupied the house.

Following a bench trial, the trial court found that Morton failed to comply with various sections of Subchapter D pertaining to disclosures in contract-for-deed transactions. As a matter of law, the trial court found that Morton's good-faith defense based on *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427 (Tex. 2005), did not apply to the Nguyens' counterclaim for liquidated damages under section 5.077 of the Property Code. The trial court rendered judgment in favor of the Nguyens, awarding the Nguyens the following: (1) $63,693.47 in actual damages—which included all payments the Nguyens made under the contract for deed, their down payment, insurance payments, tax payments, and the value of improvements—for cancellation and rescission of the contract for deed under Subchapter D; (2) $160,000 as liquidated damages for violation of section 5.077 of the Property Code; (3) $300 as the statutory remedy for Finance Code violations; (4) $10,000 for mental anguish damages; (5) $67,020 in attorney's fees; and (6) $696.74 in costs. Both parties appealed.

The court of appeals reversed the trial court's judgment on liability for the statutory penalty under section 5.077 of the Property Code and remanded that issue to the trial court to determine whether Morton made a "good faith attempt to inform [the Nguyens] of the current status of their contractual relationship," as laid out in *Flores*. 369 S.W.3d 659, 668–69 (Tex. App.—Houston [14th Dist.] 2012) (quoting *Flores*, 185 S.W.3d at 443). The court of appeals also reversed the $300 awarded for Finance Code violations because the trial court's findings of fact did not support the award. *Id.* at 676. Finally, the court of appeals affirmed the portion of the trial court's judgment awarding the Nguyens rescission and restitution under the Property Code, attorney's fees, and mental anguish damages. *Id.* at 674, 677. Only Morton petitioned this Court for review, arguing that the court of appeals erred by (1) denying him mutual restitution upon cancelling and rescinding the contract for deed, and (2) affirming the awards of attorney's fees and mental anguish damages after reversing the only claims that could support such awards. The Nguyens do not challenge the court of appeals' judgment related to the section 5.077 claim or the claim for damages under the Finance Code, so we do not address them. We address the challenged issues in turn.

## II. Subchapter D's Cancellation-and-Rescission Remedy

We begin by noting that the court of appeals erred by holding that Morton waived the issue as to whether Subchapter D's cancellation-and-rescission remedy incorporates the common law requirement of mutual restitution. Morton's briefing at the court of appeals was sufficient under Rule 38.1(i) of the Texas Rules of Appellate Procedure to warrant consideration of the issue. *See* TEX. R. APP. P. 38.1(i); *see also Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004) ("[W]e have instructed the courts of appeals to construe the Rules of Appellate

4

Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule." (quoting *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997))). Morton argued in his opening brief that if the Nguyens were entitled to rescission and restitution, then he was entitled to a setoff for the value the Nguyens received for their occupancy of the house. He provided citations to three cases that discussed recovery of the value of the use and occupation of land upon rescission. Morton also addressed the issue more thoroughly and cited to additional authority in his reply brief. Finally, as Morton pointed out in his motion for rehearing, he did not have the benefit of this Court's decision in *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817 (Tex. 2012), at the time he filed his briefs in the court of appeals. The court of appeals had the opportunity to review *Cruz* and did so in reference to the common law restitution requirements of notice and tender. 369 S.W.3d at 671 (citing *Cruz*, 364 S.W.3d at 825–27). The court of appeals should have also addressed the issue here related to mutual restitution. Rather than remanding to the court of appeals to address Morton's issue, we address this issue in light of our decision in *Cruz*.

A contract for deed, unlike a typical secured transaction involving a deed of trust, is a financing arrangement that allows the seller to maintain title to the property until the buyer has paid for the property in full. *See Flores*, 185 S.W.3d at 429. Under Subchapter D, real estate transactions involving contracts for deed require the seller to make certain disclosures and provide certain notices. *See, e.g.*, TEX. PROP. CODE §§ 5.069, .070, .072, .085. Various sections in Subchapter D entitle a buyer to "cancel and rescind" the contract for deed and "receive a full refund of all payments made to the seller" if the seller fails to comply with the disclosure and notice requirements. *See, e.g.*,

5

*id.* §§ 5.069(d), .070(b), .072(e). For instance, if the seller fails to comply with disclosure requirements related to property that is encumbered by an existing lien, then the buyer can "cancel and rescind" the contract for deed and receive from the seller "all payments of any kind made to the seller under the contract" and reimbursement for (1) taxes paid by the buyer, and (2) the value of any improvements made to the property by the buyer. *Id.* § 5.085(c)(2).

Morton argues that Subchapter D's cancellation-and-rescission remedy incorporates the common law principle of mutual restitution, which requires buyers under a contract for deed to restore the benefits they received under the rescinded contract. The Nguyens, on the other hand, argue that the Legislature did not intend to codify in Subchapter D the common law principle of the equitable remedy of rescission. We addressed a similar issue within the context of the DTPA in *Cruz*, and our analysis in that case instructs the issue presented here. *See Cruz*, 364 S.W.3d at at 824–26.

In *Cruz*, a consumer sought the remedy of "restoration" under section 17.50 of the Business and Commerce Code for alleged DTPA violations. *Id.* at 823. Subsection 17.50(b)(3) provides that a consumer may obtain "orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter." TEX. BUS. & COM. CODE § 17.50(b)(3). The consumer argued that section 17.50's restoration remedy did not incorporate the common law principle of rescission, which necessarily includes mutual restitution. *See Cruz*, 364 S.W.3d at 825. Therefore, the consumer averred, he was entitled to all the money paid by him (or on his behalf) under the agreement, without surrendering any benefits that he had received—even though such an approach would give the consumer a windfall. *Id.* at 823, 826. We

6

disagreed with the consumer's position, in part, holding that section 17.50's restoration remedy contemplates mutual restitution, but not the wholesale adoption of all the common law rescission requirements. *Id.* at 826. We reach the same conclusion in this case.

Our analysis begins with Subchapter D's text, which provides that a buyer's remedy for the seller's noncompliance with certain disclosure requirements is "to cancel and rescind the executory contract and receive a full refund of all payments made to the seller." *See* TEX. PROP. CODE §§ 5.069(d)(2), .070(b)(2), .072(e)(2), .085(c)(2). As we recognized in *Cruz*, rescission is the common name for the composite remedy of rescission and restitution. *Cruz*, 364 S.W.3d at 825 (citing RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 54 cmt. a (2011)); *see also* BLACK'S LAW DICTIONARY 1420–21 (9th ed. 2009) (providing that "rescission" is "[a] party's unilateral unmaking of a contract for a legally sufficient reason . . . generally available as a remedy . . . and is accompanied by restitution of any partial performance, thus restoring the parties to their precontractual positions"). It is a term that requires each party to "restore[] property received from the other," or in other words, mutual restitution. *Cruz*, 364 S.W.3d at 825–26. In line with *Cruz*, we conclude that the Legislature intended Subchapter D's cancellation-and-rescission remedy to also contemplate the common law element of mutual restitution.

The Nguyens and the dissent argue that the statutory scheme in Subchapter D compels a different result than that reached in *Cruz*. We disagree. Like the DTPA's restoration remedy, Subchapter D's cancellation-and-rescission remedy is not intended to be punitive—it merely

7

provides the buyer the option of unwinding the transaction.[1] *See Cruz*, 364 S.W.3d at 826. Allowing a buyer to recover all benefits bestowed upon the seller upon rescission without also requiring the buyer to surrender the benefits that he received under the contract would result in a windfall inconsistent with the general nature of Subchapter D's cancellation-and-rescission remedy. *See id.* at 825–26. "[R]escission is not a one-way street." *Id.* at 825. Rather, as we explained in *Cruz*, "[recission] requires a mutual restoration and accounting, in which each party restores property received from the other." *Id.* at 825–26 (citing RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 37 cmt. d (2011)). A seller's wrongdoing does not excuse the buyers from counter-restitution under the circumstances of this case. *See id.* at 826. But here, as in *Cruz*, we similarly hold that notice and restitution or a tender of restitution are not prerequisites to the cancellation-and-rescission remedy under Subchapter D, as long as the affirmative relief to the buyer can be reduced by (or made subject to) the buyer's reciprocal obligation of restitution. *See id.* at 827 (citing RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 54(5) (2011)).

The dissent concludes that the statutory language "and receive a full refund of all payments made to the seller" evidences the Legislature's intent not to incorporate the common law elements

---

[1] As recognized by the dissent, we have held that the liquidated damages provisions in sections 5.077 and 5.079 of Subchapter D are indeed punitive. ___ S.W.3d at ___ (Boyd, J., dissenting) (citing *Flores*, 185 S.W.3d at 432–33); *see also* TEX. PROP. CODE §§ 5.077(d) (providing liquidated damages and attorney's fees if a seller fails to provide a buyer with an annual statement), .079(b) (providing liquidated damages and attorney's fees if a seller fails to comply with certain title-transfer requirements). Yet this fact does not compel a conclusion that *all* of Subchapter D's remedies were intended to be punitive. *Cf. Cruz*, 364 S.W.3d at 826 (recognizing that the DTPA claims are generally punitive but that "[r]estoration is different"). In addition, we note that sections of Subchapter D that allow a buyer to cancel and rescind a contract for certain violations also make those same violations actionable under the DTPA. *See, e.g.*, TEX. PROP. CODE §§ 5.069(d)(1), .070(b)(1), .072(e)(1), .085(c)(1). We disagree with the Nguyens and the dissent that Subchapter D's cancel-and-rescind remedy should be treated differently than the DTPA's restoration remedy that we characterized as non-punitive in *Cruz*.

8

of rescission. ___ S.W.3d at ___; *see, e.g.*, TEX. PROP. CODE §§ 5.069(d), .070(b), .072(e). In reaching this conclusion, the dissent misconstrues the term "full refund" as being a one-sided transaction when, in reality, a refund in a typical transactional setting contemplates both parties giving back what they received.[2] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1910 (2002) (defining "refund" as "to give or put back" and "to return (money) in restitution"). This language is consistent with our construction requiring the mutual restoration of benefits. In contract-for-deed transactions, the buyer cannot give back the title to the property in exchange for "a full refund of all payments made to the seller" because the buyer receives title only after all payments have been made. *See Flores*, 185 S.W.3d at 429. Instead, the buyer must return what it received under the contract for deed at that time—the occupation of the property. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 37 cmt. d (2011) ("Rescission is mutual: a plaintiff seeking to be restored to the status quo ante must likewise restore to the defendant whatever the plaintiff has received in the transaction."); *Cruz*, 364 S.W.3d at 825–26 (citing same). While the buyer remains entitled to "a full refund of all payments made to the seller," cancellation and *rescission* of a contract also requires that the buyer restore to the seller the value of the buyer's occupation of the property.

Because the trial court did not consider the value of the Nguyens' interim occupation of the property, we remand the case to the trial court to determine the Nguyens' liability for the rental value of the property during their occupation.

---

[2] For example, if a retail store has a policy that entitles a buyer to a full refund for a defective product, surely no logical consumer would think that he or she is entitled to *both* the product and a refund of the price paid for the product simply because the policy entitles the consumer to a "full refund of the purchase price."

9

### III. Attorney's Fees and Mental Anguish Damages

We turn next to Morton's issue concerning the awards of attorney's fees and mental anguish damages. Morton argues that the Nguyens are not entitled to either attorney's fees or mental anguish damages because no claims supporting the awards survived the court of appeals' judgment. We agree. The trial court found that Morton's conduct violated various sections of Subchapter D and constituted statutory fraud in a real estate context. The trial court then utilized those findings to afford the Nguyens the maximum recovery by rendering judgment on the Subchapter D violations and Finance Code violations, which included an award of $67,020 in attorney's fees. On appeal, the court of appeals reversed the only two causes of action that supported an award of attorney's fees—the claim for liquidated damages under section 5.077 of the Property Code and the Finance Code claims. *See* 369 S.W.3d at 669, 676. Because no remaining cause of action supports an award of attorney's fees, the court of appeals should have also reversed the award of attorney's fees predicated on the section 5.077 claim and the Finance Code claims. *Cf. Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (reversing an award of attorney's fees when the only cause of action that supported the award was reversed on appeal). To the extent that the Nguyens prevailed on their section 5.077 claim on remand or elected to recover under their alternative statutory fraud theory, the trial court could award attorney's fees based on either of those causes of action. *See* TEX. PROP. CODE § 5.077(c) (providing for reasonable attorney's fees); *see also* TEX. BUS. & COM. CODE § 27.01(e) (providing for reasonable and necessary attorney's fees for claims of statutory fraud in

10

real estate transactions); *Boyce Iron Works v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) (holding that a "[prevailing] party may seek recovery under an alternative theory if the judgment is reversed on appeal").

For similar reasons, we conclude that the court of appeals should have also reversed the award for mental anguish damages when it reversed the trial court's judgment for damages under the Finance Code. *Cf. Parkway*, 901 S.W.2d at 441. The Nguyens' pleadings demonstrate that they sought mental anguish damages only for the Finance Code violations and DTPA claims. The trial court did not find that Morton violated the DTPA, and the court of appeals reversed the award for damages under the Finance Code. *See* 369 S.W.3d at 676. Accordingly, no cause of action supports an award of mental anguish damages. Because the Nguyens' pleadings do not support an award for mental anguish damages under any other claim, the court of appeals should have also reversed the award in conjunction with reversal of the Finance Code claim.[3] *See* TEX. R. CIV. P. 301 (providing that a "judgment of the court shall conform to the pleadings").

## IV. Conclusion

Accordingly, we grant Morton's petition for review and, without hearing oral argument, TEX. R. APP. P. 59.1, we reverse the portion of the court of appeals' judgment affirming the trial court's

---

[3] The court of appeals held that Morton waived the issue because he did not argue "that the trial court could not have awarded mental anguish damages in conjunction with [the Property Code] violations." 369 S.W.3d at 676. Even assuming the Nguyens pled for mental anguish damages for the Subchapter D claims, we are not convinced that mental anguish damages are recoverable for the Property Code violations found by the trial court in this case.

11

awards of actual damages for cancellation and rescission, mental anguish damages, and attorney's fees, and we remand the case to the trial court for proceedings consistent with this opinion.

_____
Paul W. Green
Justice

OPINION DELIVERED: August 23, 2013