# NO. 12-14-00253-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JERRY WEAKS AND JOYCE WEAKS,*<br>*APPELLANTS* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *KATHLEEN JEANETTE WHITE,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *OPINION*

Jerry Weaks and Joyce Weaks appeal an adverse summary judgment rendered in Kathleen Jeanette White's suit against them concerning an executory contract for the conveyance of real property. On appeal, the Weakses raise three issues concerning the applicability of common law defenses and the awards for damages and attorney's fees. We affirm.

### BACKGROUND

On June 5, 2002, the Weakses, as sellers, and White, as purchaser, executed a document entitled "Contract for Deed" pursuant to which White agreed to make a down payment and monthly installments for ten years to purchase a small tract of land and a mobile home. White did not make a payment in December 2011, January 2012, or February 2012. In February 2012, the Weakses demanded that she pay the amount past due as well as the remaining amount due under the contract, a total of $2,142.74, within three days of the demand letter, "or be out." On February 23, either at the Weakses' direction or by mistake, the water meter was removed from the property, depriving White of access to water. On March 15, 2012, while still residing in the property at issue, White sued the Weakses for violations of Chapter 5, Subchapter D, of the Texas Property Code, the Texas Deceptive Trade Practices Act, and breach of their duty of good faith and fair dealing. She asked for statutory damages, economic and actual damages, damages

for mental anguish, exemplary damages, and cancellation and rescission of the contract. She also sought a writ to restore her water service and a temporary restraining order to restrain the Weakses from affecting her utility services or interfering with her use and enjoyment of the property. Additionally, she asked for an award of attorney's fees.

The trial court immediately signed the requested temporary restraining order and writ to restore the water. Shortly thereafter, the court signed a temporary injunction. Six months later, while still residing on the property at issue, White filed a motion for summary judgment addressing four sections of Chapter 5 of the property code. In support of her motion, she relied on deemed admissions, her affidavit, her attorney's affidavit, the contract for deed, and the Weakses' demand letter. She specifically waived all causes of action and relief not requested in the motion.

The Weakses responded to the motion, asserting that they complied, or at least substantially complied, with the statutory requirements. They also asserted that White is estopped from seeking damages and barred by laches. They averred generally that "it appears that there are genuine issues as to material facts." In support of their response, the Weakses provided only an affidavit signed by both of them.

After a hearing on the motion, the trial court found that the Weakses failed to comply with four sections of Chapter 5 of the property code as alleged and that White is entitled to damages and attorney's fees. The court rendered a partial summary judgment adjudging the Weakses liable for violation of property code Sections 5.069, 5.070, 5.072, and 5.077. The court decreed that White is entitled to recover $43,319.53 less the dollar amount of the rental value of the months that she occupied the property after she rescinded the contract by filing suit. The court further decreed that the Weakses are liable to White for $1,000.00 for violation of Section 5.077 and ordered them to pay attorney's fees in the amount of $10,250.00.

The parties stipulated that White occupied the property for twenty-one months after filing suit and the fair market rental value was $356.81 per month for a total offset of $7,493.01. In the final judgment, the court adjudged that White recover from the Weakses $35,826.52 in damages, $10,250.00 in attorney's fees, and costs of court.

2

In their first issue, the Weakses contend that the trial court erred in determining the proper offset or reasonable rent against the refund of White's purchase money. They argue that if White were to receive the amount awarded, without restoring the rental value of her occupation of the property, she would be receiving an unfair windfall. They assert that the purchaser must pay restitution for the total period of time she occupied the property, not just the time period after giving notice of rescission. Accordingly, the argument continues, the purchase money figure determined by the trial court, $43,319.53, should be offset by the number of months that White occupied the property, 139, multiplied by the reasonable rental value. The parties agreed that the reasonable rental value was $356.81 per month. This would result in a restitution figure of $49,596.59, completely offsetting the reimbursement due under the judgment. Additionally, White would owe $6,277.06 for her occupancy.

## Applicable Law

A contract for deed, unlike a typical secured transaction involving a deed of trust, is a financing arrangement that allows the seller to maintain title to the property until the buyer has paid for the property in full. *Morton v. Nguyen*, 412 S.W.3d 506, 509-10 (Tex. 2013). Chapter 5, Subchapter D of the Texas Property Code imposes various conditions and disclosure requirements on sellers entering into contracts for deed, also known as executory contracts for the conveyance of real property. Tex. Prop. Code Ann. §§ 5.069-.074, 5.076-.077 (West 2014). A seller's failure to comply with Subchapter D's requirements entitles a buyer to "cancel and rescind" a contract for deed and "receive a full refund of all payments made to the seller." *Id*. at §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2). Subchapter D's cancellation-and-rescission remedy contemplates the common law element of mutual restitution. *Morton*, 412 S.W.3d at 511. Thus, while the buyer is entitled to a full refund of all payments made to the seller, the statute also requires that the buyer restore to the seller the value of the buyer's occupation of the property. *Id*. at 512. The buyer must restore to the seller supplemental enrichment in the form of rent for the buyer's interim occupation of the property upon cancellation and rescission of the contract for deed. *Id*. at 508.

## Analysis

The parties agreed that White rescinded the contract on the date she filed her petition. The trial court determined that the offset amount should be $7,493.01 based on the twenty-one

3

months that White occupied the property after she filed this suit. The property code provides that the seller's failure to furnish certain required information to the purchaser "entitles the purchaser to cancel and rescind the executory contract and receive a full refund of all payments made to the seller." TEX. PROP. CODE ANN. §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2). The Texas Supreme Court has considered the question of whether a rescinding purchaser must restore to the seller the benefits the purchaser received under the contract. That court determined that, upon rescission, the purchaser must restore to the seller the value of the purchaser's post-rescission occupation of the property. *See Morton*, 412 S.W.3d at 512. Because the trial court's formula conforms to the supreme court's interpretation of Chapter 5, Subchapter D regarding this issue, we overrule the Weakses' first issue.

### COMMON LAW DEFENSES

In their second issue, the Weakses assert that the trial court erred in failing to recognize any common law defenses to White's claims. They argue that they raised the defenses of estoppel and laches in their response to White's motion for summary judgment, and they were therefore entitled to a trial on the merits. They rely on *Morton v. Nguyen*, where the supreme court recognized a common law element and applied it to the statutory remedy in Subchapter D, extrapolating that the same reasoning applies to estoppel and laches.

**Applicable Law**

Statutory construction is a legal question, which we review de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). Our primary objective when construing a statute is to determine the Legislature's intent. *Tex. Lottery Comm'n*, 325 S.W.3d at 635. If the statute is unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We may consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023(1),(3),(5) (West 2013); *Shumake*, 199 S.W.3d at 284.

Statutes may modify common law rules. *Dugger v. Arredondo*, 408 S.W.3d 825, 829 (Tex. 2013). A statute may be interpreted as abrogating a principle of common law only when either the express terms of the statute or its necessary implications clearly indicate such an intent

by the legislature. ***Bruce v. Jim Walters Homes, Inc.***, 943 S.W.2d 121, 122-23 (Tex. App.—San Antonio 1997, pet. denied). Common law defenses may not be used to defeat claims brought under a statute that was not designed to be a codification of the common law. ***Smith v. Baldwin***, 611 S.W.2d 611, 616 (Tex. 1980) (held that DTPA not designed to be codification of common law; DTPA was designed to provide consumers a cause of action for deceptive practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit); ***Frank B. Hall & Co. v. Beach, Inc***., 733 S.W.2d 251, 264 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) (op. on reh'g) (held that common law defense of contributory negligence cannot defeat insurance code claims).

Estoppel based in law prevents a party from taking positions contrary to those it took in property deeds and contracts in order to preserve the document's integrity. *See **Mathews v. Sun Oil Co.***, 411 S.W.2d 561, 564 (Tex. Civ. App.—Amarillo 1966), *aff'd*, 425 S.W.2d 330 (Tex. 1968). Quasi-estoppel is an equitable doctrine that prevents a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. ***Lopez v. Munoz, Hockema & Reed, L.L.P.***, 22 S.W.3d 857, 864 (Tex. 2000). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. ***Id***. Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. ***Brooks v. Brooks***, 257 S.W.3d 418, 423 (Tex. App.—Fort Worth 2008, pet. denied).

The defense of laches precludes a plaintiff from asserting legal rights after an unreasonable delay against a defendant who has changed his position in good faith and to his detriment because of the delay. ***Fair v. Arp Club Lake, Inc***., 437 S.W.3d 619, 625 (Tex. App.—Tyler 2014, no pet.). Laches is generally available as an affirmative defense solely in suits in equity and therefore does not apply to statutory challenges. ***Phillips v. The Dow Chem. Co.***, 186 S.W.3d 121, 129 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In such a suit, absent extraordinary circumstances, the statute of limitations is the appropriate defense. ***Houston Lighting & Power Co. v. City of Wharton***, 101 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

**Analysis**

Although the Weakses' argument does not make it clear which type of estoppel they assert, it seems most likely estoppel based in law or quasi-estoppel. The pertinent portion of the Weakses' summary judgment response is as follows:

> Plaintiff would appear to be estopped from making any further complaints, or seeking damages, from or in regard to the Weaks, and would also be barred by laches. This is because of the approximately 10 years that Plaintiff occupied the property, made the payments (although usually late), and made no complaint about any of the matters referred to in her petition or motion for summary judgment. This is additionally because, after the misunderstandings regarding the water meter were resolved, Plaintiff continued to either occupy the property herself, or she let family members live in the house on the property.

Because the suit arises from the parties' executory contract for the conveyance of real property, we consider the history of the applicable statute. In 1995, the legislature amended Chapter 5 of the property code to address serious abuses in the Texas-Mexico border region known as "the colonias," a rural area where many residents were financing the purchase of their homestead properties through contracts for deed. *See Flores v. Millennium Interests, LTD.*, 185 S.W.3d 427, 434-35 (Tex. 2005) (Wainwright, J., concurring). The legislature acted to provide legal protection to these purchasers. The legislature further amended Chapter 5 in 2001 to extend these protections to the remainder of the state's contracts for deed. *Id*. at 435.

Subchapter D of Chapter 5 does not explicitly address the application of common law defenses. However, the Legislature is capable of doing so when it chooses. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. § 73.006 (West 2011) (providing that statute addressing libel does not affect the existence of common law, statutory law, or other defenses to libel); TEX. LABOR CODE ANN. § 406.033 (West Supp. 2014) (providing that certain common law defenses are unavailable against an employer by an employee who is not covered by workers' compensation insurance and the section does not reinstate or otherwise affect the availability of defenses at common law); TEX. FAM. CODE ANN. § 4.105(c) (West 2006) (providing that the remedies and defenses in the section regarding marital agreements are the exclusive remedies or defenses, including common law remedies or defenses).

Subchapter D was enacted to protect purchasers who execute a contract for deed. *Flores*, 185 S.W.3d at 435. The statute provides specific remedies to the aggrieved purchaser when the seller does not comply with the statute. The purchaser is authorized to cancel the contract and

obtain a full refund of all payments made to the seller up to the point of cancellation. *See* TEX. PROP. CODE ANN. §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2). There is no indication that the Legislature intended estoppel defenses to be used to deny purchasers the statutory remedy.

Furthermore, application of an estoppel defense would prevent the purchaser from cancelling the contract for deed and getting her money refunded after having the benefit of living on the property. This is the opposite of what the statute provides. In *Morton*, the court focused on the term "rescind" in Sections 5.069(d)(2), 5.070(b)(2), 5.072(e)(2), and 5.085(c)(2) and determined that "rescission is the common name for the composite remedy of rescission and restitution." *Morton*, 412 S.W.3d at 510. Because rescission requires "mutual restitution," the court concluded that "the Legislature intended Subchapter D's cancellation-and-rescission remedy to also contemplate the common law element of mutual restitution." *Id*. at 511. There are no terms in Subchapter D that appear to contemplate the common law affirmative defense of estoppel. On the contrary, Subchapter D heavily favors the purchaser when the seller is at fault. Accordingly, the common law defense of estoppel cannot be used to defeat claims brought pursuant to Chapter 5, Subchapter D of the property code. *See Smith*, 611 S.W.2d at 616.

White's lawsuit raised claims pursuant to the property code. The statute of limitations is the appropriate defense, not the equitable defense of laches, and this case presents no extraordinary circumstances. *See Houston Lighting & Power Co.*, 101 S.W.3d at 638. While the supreme court in *Morton* determined that the Legislature intended Subchapter D's cancellation and rescission remedy to also contemplate the common law element of mutual restitution, we detect no such intention to contemplate the use of the common law defenses of estoppel and laches. We overrule the Weakses second issue.

## ATTORNEY'S FEES

In their third issue, the Weakses assert that the trial court erred in awarding White the total amount of attorney's fees she claimed. They argue that only her claim pursuant to Section 5.077 provides for an award of attorney's fees. Therefore, the argument continues, she should be awarded fees only for the work she did on that one claim. The failure to limit the award to that claim, they assert, results in an attorney's fees award that is unreasonable. They request the award be reduced or the issue of attorney's fees be remanded for a hearing on the merits.

7

**Applicable Law**

When a lawsuit involves multiple claims, the proponent of attorney's fees must segregate recoverable fees from those incurred on claims for which fees are not recoverable. ***Tony Gullo Motors I, L.P. v. Chapa***, 212 S.W.3d 299, 311 (Tex. 2006). Or, the party seeking to recover attorney's fees bears the burden of demonstrating that segregation is not required. ***Id***.

A timely objection with supporting controverting evidence on the question of which fees are recoverable is needed to reverse an award that includes nonsegregated fees. *See **Rapid Settlements, Ltd. v. Settlement Funding, LLC***, 358 S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Therefore, a party waives any error arising from possibly awarding nonrecoverable fees when the complaining party does not object to failure to segregate between legal services for which fees are properly recoverable and those for which no recovery of fees is authorized. ***Green Int'l, Inc. v. Solis***, 951 S.W.2d 384, 389 (Tex. 1997).

**Analysis**

In her motion for summary judgment, White alleged that she is entitled to an award of attorney's fees pursuant to property code Section 5.077(c)(2). *See* TEX. PROP. CODE ANN. § 5.077(c)(2) (West 2014). She presented as supporting evidence the affidavit of her attorney who asked for $10,250.00 as compensation for the time she spent working on the case. The Weakses did not address the claim for attorney's fees in their response to the motion for summary judgment.

At the hearing on the motion, the trial court orally ruled in White's favor on her four claims of property code violations and the claim for attorney's fees. The Weakses raised the issue of the need to segregate attorney's fees in a post-summary judgment hearing letter brief and a motion to disregard the court's prior finding. At a later hearing, White objected to reconsideration of the attorney's fee issue and the trial court sustained the objection, specifically stating that it would not reconsider that issue. The court's final summary judgment incorporates its prior liability rulings and orders the Weakses to pay $10,250.00 in attorney's fees.

A purchaser recovering liquidated damages under Section 5.077 of the property code is entitled to reasonable attorney's fees. *See* TEX. PROP. CODE ANN. § 5.077(c)(2). Sections 5.069, 5.070, and 5.072, the other bases for White's claims, do not authorize an award of attorney's fees. *See* TEX. PROP. CODE ANN. §§ 5.069, 5.070, 5.072. Accordingly, we agree with the

Weakses' contention that White was actually entitled only to attorney's fees attributable to her attorney's work on her Section 5.077 claim.

However, because the Weakses' segregation argument was not included in a timely response, the viability of their late complaint was left to the discretion of the trial court. *See Harvey v. Alexander*, 671 S.W.2d 727, 729 (Tex. App.—Fort Worth 1984, no writ). The Weakses do not assert on appeal that the trial court abused its discretion by refusing to consider their late segregation argument. Accordingly, the Weakses waived their complaint that White failed to segregate recoverable fees from those incurred on claims for which fees are not recoverable. *See Solis*, 951 S.W.2d at 389. We overrule the Weakses third issue.

## DISPOSITION

Having determined the trial court committed no reversible error, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered October 21, 2015.
*Panel consisted of Worthen, C.J. and Hoyle, J.*
*Neeley, J., concurring in part and dissenting in part.*

I concur with the majority's opinion that the trial court did not err in the formula used in calculating its damage award and in refusing to allow the Weakses to assert the common law defenses of estoppel and laches. While I agree that the Weakses waived error as to White's failure to segregate between legal fees that were properly recoverable from those for which recovery was not authorized, I disagree with the majority's affirming the award of attorney's fees to White. A trial court's summary judgment determination is reviewed de novo. *Mann Frankfort Stein & Lipp Advisor's, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Valence Operating Co. v. Dorsett*, 1645 S.W.3d 656, 661 (Tex. 2005). In conducting a de novo review of the trial court's summary judgment, the appellate court can review the pleadings and evidence to determine whether the trial court properly granted judgment. *See Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665, 670 (Tex. App.—Texarkana 1996, writ denied); *Bean v. Reynolds Realty Grp., Inc*., 192 S.W.3d 856, 860-61 (Tex. App.—Texarkana 2006, no pet.). The summary judgment evidence must still support the appellate burden of showing no genuine issue of material fact exists and that appellee is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Because I believe the affidavit filed by White's attorney to be legally insufficient to support the attorney's fees award, I respectfully dissent.

To constitute proper summary judgment evidence, an affidavit must be made on personal knowledge, set forth facts that would be admissible in evidence, and show the affiant's

competence. TEX. R. CIV. P. 166a(f); ***United Blood Servs. v. Longoria***, 938 S.W.2d 29, 30 (Tex. 1997). The affidavit must be based on facts and cannot merely recite factual conclusions. Conclusory statements that are not supported by facts are not proper summary judgment proof because they are not credible or susceptible to being readily controverted and therefore, constitute no evidence at all. *See **Elizondo v. Krist***, 415 S.W.3d 259, 264 (Tex. 2013); ***McIntyre v. Ramirez***, 109 S.W.3d 741, 749-50 (Tex. 2003); ***Ryland Grp. v. Hood***, 924 S.W.2d 120, 122 (Tex. 1996).

An affidavit that is merely a sworn statement of the allegations in a pleading or that simply paraphrases statutory language is conclusory and lacks probative force. *See **Lenoir v. Marino***, No. 01-13-00134-CV, 2015 WL 4043248, at *14 (Tex. App.—Houston [1st Dist.] 2015, rule 53.7(f) motion granted) (not yet released for publication); ***Nichols v. Lightle***, 153 S.W.3d 563, 570 (Tex. App.—Amarillo 2004, pet. denied). A summary judgment affidavit must state that it is based on the affiant's personal knowledge and that the facts in it are true. ***Kerlin v. Arias***, 274 S.W.3d 666, 668 (Tex. 2008). But the mere recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for the knowledge. The affidavit must explain how the affiant has personal knowledge. ***Valenzuela v. State & Cnty. Mut. Fire Ins. Co.***, 317 S.W.3d 550, 552-53 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

The evidence before us in support of White's claim for attorney's fees is the affidavit of White's attorney. That affidavit states as follows:

> "My name is Jane Parreiras-Horta. I am over 18 years of age, of sound mind, and fully competent to make this affidavit. I have personal knowledge of the facts stated herein and they are all true and correct.
>
> On March 2, 2012, Movant employed me in connection with the matter on which this suit is based. I have spent 71 hours on this case. However, I am asking for compensation for only 41 hours which includes doing or causing to be done the following:
>
> Plaintiff's claim against Defendant was investigated, including researching real property records.
>
> Demand was made on Defendants.
> Suit was prepared and filed, including obtaining ex parte relief.
> Possible resolutions were discussed.
> Discovery requests were prepared and served.
> A motion for summary judgment was prepared.
>
> Based on my education, training and experience, it is my opinion that a reasonable hourly rate for my time in this case is $250.00. Movant is entitled to recover the reasonable attorney's fees requested herein pursuant to TEX. PROP. CODE ANN. § 5.077(c)(2).
>
> It is my opinion that these fees are reasonable attorney's fees based upon the following factors:
> 1. The novelty and difficulty of the issues involved, the skill required to provide the legal services properly, and the experience, reputation, and expertise of the lawyer or lawyers performing the services;
> 2. The time and labor involved to perform the legal services properly; and

3. The fee customarily charged in the community for similar services."[1]

The Texas Supreme has identified eight factors the fact finder should consider when determining the reasonableness of an award of attorney's fees. ***Arthur Anderson & Co. v. Perry Equip. Corp.***, 945 S.W.2d 812, 818-19 (Tex. 1997) (quoting Tex. Disciplinary R. Prof. Conduct 1.04, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G. app. A (State Bar Rules, art. X, § 9) (West 2013)). A party seeking attorney's fees is not required to present evidence on all these factors. ***Weaver v. Jamar***, 383 S.W.3d 805, 814 (Tex. App.—Houston [14th Dist.] 2012, no pet.); ***State & Cnty. Mut. Fire Ins. Co.,*** 228 S.W.3d 404, 408 (Tex. App.—Fort Worth 2007, no pet.). While the ***Arthur Anderson*** factors represent well established guidelines in presenting evidence to support a claim for attorney's fees, it has become less clear when general unsupported statements contained within uncontroverted affidavits become so general as to become conclusory. The result is uncertainty to both practitioners and trial courts as to where, if there is one at all, the line is between probative and conclusory statements when uncontroverted affidavits fail to contain underlying facts.

In ***Garcia v. Gomez***, 319 S.W.3d 638, 648 (Tex. 2010), the Texas Supreme Court examined the sufficiency of attorney's fees evidence, which did not include underlying facts to support the testifying attorney's opinions. That relevant testimony is as follows:

> My name is Ronald Hole. I'm an attorney practicing in Hidalgo County, doing medical-malpractice law/litigation. I have done it since 1984. For a usual and customary case like this these fees for handling it up to the point of dismissal, the reasonable and necessary attorney's fees for handling that is 12,200.

No billing statements were attached and are not required under Texas law. *See **In re A.B.P.***, 291 S.W.3d 91, 99 (Tex. App.—Dallas 2009, no pet.); ***Air Routing Int'l Corp (Canada) v. Britannia Airways, Ltd.***, 150 S.W.3d 682, 692 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Opposing counsel did not cross-examine the witness, present any evidence on the issue of attorney's fees, or question the reasonableness of any of the fees.

The court of appeals affirmed the trial court's finding this testimony was conclusory in denying an award of attorney's fees and further concluded the attorney's testimony was insufficient because it failed to establish the party actually incurred attorney's fees which the court described as "an essential statutory element." ***Garcia v. Gomez***, 286 S.W.3d 445, 449 (Tex. App.—Corpus Christi, *rev'd by **Garcia v. Gomez***, 319 S.W.3d 638 (Tex. 2010)). In a split decision, the Texas Supreme Court reversed the court of appeals and remanded the issue of attorney's fees to the trial court. In doing so, the majority stated "[a]n attorney's testimony about the reasonableness of his or her own fees is not like other expert testimony. . . . The attorney's testimony is not objectionable as merely conclusory because the opposing party, or that party's attorney, likewise has some knowledge of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney regarding the reasonableness of his fee." ***Garcia***, 319 S.W.3d at 641. Under the circumstances in that case, the majority found the testimony to not be merely conclusory, though the testimony lacked specifics, in that the testimony represented some evidence of what a reasonable attorney's fee might be in that case.

---

[1] The trial court awarded attorney's fees only through entry of summary judgment. The remaining portions of the affidavit, which pertain to additional fees that would be incurred later, are not relevant to this dissent and have been omitted.

11

Justice Jefferson dissented pointing out the gaps in the attorney's fee testimony and cited numerous cases where the Texas Supreme Court had held a party seeking an award of attorney's fees carries the burden of proof and waives the right to those fees when it fails to produce evidence of attorney's fees. *Id*. at 645-47 (Jefferson, C.J., dissenting). Justice Johnson joined in Justice Jefferson's dissent, and in his own dissent pointed out the rule has long been that whether testimony is conclusory turns on the testimony itself, not on whether the opposing party or his attorney has knowledge of the matters underlying the testimony and examines the testifying witness. He disagreed with the majority's view that attorney's testimony about reasonableness of his or her fees is different from other expert's testimony and failed to see valid reasons for the majority's holding that conclusory testimony, which according to longstanding precedent has no probative force, is converted to evidence with probative force because an adverse party has information or knowledge about matters underlying the testimony. *Id.* at 648 (Johnson, J., dissenting). Both believed the testimony was insufficient to support an award of attorney's fees and would have affirmed the court of appeals' judgment.

The Fort Worth court of appeals in *Sundance Minerals L.P., v. Moore*, 354 S.W.3d 507, 515 (Tex. App.—Fort Worth 2011, pet. denied), following the holding in *Garcia*, found that general statements without specifics represent evidence of reasonable and necessary attorney's fees sufficient to survive a legal sufficiency challenge. The court cited *Garcia* and numerous courts of appeals cases in which similar affidavits were found to not be conclusory. Justice Gabriel dissented by distinguishing the affidavit before the court from those in cases relied on by the majority.

Other courts of appeals have accepted uncontroverted testimony as a matter of law as to the reasonableness of attorney's fees not supported by underlying facts when the testimony is clear, positive, and direct, especially when the opposing party had the means and opportunity to disprove and failed to do so. *Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.—Fort Worth 1997, no writ). However, the Dallas court in *Eberstein v. Hunter*, 260 S.W.3d 626, 630 (Tex. App.—Dallas 2008, no pet.), held that an uncontroverted attorney's fees affidavit similar to the one in *Garcia* was conclusory and therefore, no evidence of attorney's fees.

This court in *In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App.—Tyler 2009, no pet.), held that an uncontroverted affidavit filed by the movant's attorney in a summary judgment proceeding that sets forth the affiant's qualifications, opinions regarding reasonable attorney's fees, and the basis for the opinions will be sufficient to support a summary judgment award of attorney's fees. The affidavit upheld in *Estate of Tyner* reflected the affiant was a licensed attorney who was familiar with the reasonable and necessary fees charged, had personal knowledge of the services rendered to appellee in the case and that stated those services were reasonable, necessary, and customary. This affidavit was found to be legally sufficient to support the trial court's attorney's fees award in the absence of the appellant's presenting controverting evidence raising a fact issue. *See also Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894 (Tex. App.—Texarkana 2009, pet. denied); *Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 422 (Tex. App.—Fort Worth 2011, pet. denied).

Though the legally sufficient threshold for an uncontroverted affidavit is minimal, I feel the affidavit in this case falls below that minimum threshold for the following reasons. First, the affidavit fails to state the affiant's qualifications. The affidavit is silent about whether affiant is an attorney. While the affiant bases her opinion as to what a reasonable hourly rate for "my time" would be on "my education, training, and experience," the affidavit fails to state any specifics as to her education, training, and experience to support her opinion. The record before

us, in our de novo review, contains a sworn IOLTA Certificate signed by the affiant as well as another affidavit verifying that the Request for Admissions served on the Weakses were not answered in which affiant averred she "is the attorney of record for plaintiff in this case." White's pleadings also reflect the affiant is White's attorney. This does not change my view. As a general rule, pleadings are not summary judgment evidence. *Laidlaw Waste Sys. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995). I do not believe a sworn statement that merely states the affiant is the attorney for the party seeking attorney's fees sufficiently sets forth the affiant's qualifications.

Second, the affidavit fails to set forth the specifics of affiant's personal knowledge of the novelty and difficulty or the issues presented in this case, the skill required to provide the needed legal services to White, or the experience and expertise of the lawyer or lawyers performing the legal services. The affidavit does not specify how many cases of this nature affiant had handled, or whether she was "personally familiar" with the *Arthur Anderson* factors listed, or what a customary fee for similar services would be in the community. Absent such information, the statements are so general as to be merely conclusory. The affidavit fails to affirmatively show a basis for the personal knowledge affiant has of facts supporting her opinions. *See Valenzuela*, 317 S.W.3d at 552-53.

I cannot agree that an affidavit in support of attorney's fees that does not set forth the affiant's qualifications or affirmatively show the basis of the affiant's personal knowledge is sufficient to support an attorney's fee award and is therefore, distinguishable from *Garcia* and our holding in *Estate of Tyner*. Such would undermine the basic evidentiary requirements of Texas Rule of Civil Procedure 166a(f). Accordingly, I would reverse the trial court's award of attorney's fees to White.


**GREG NEELEY**
Justice


(PUBLISH)


13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 21, 2015

NO. 12-14-00253-CV

**JERRY WEAKS AND JOYCE WEAKS,**
Appellants
V.
**KATHLEEN JEANETTE WHITE,**
Appellee

---

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. 2012B-0340)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellants, **JERRY WEAKS AND JOYCE WEAKS**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*
*Neeley, J., concurring in part and dissenting in part.*