**REVERSE and REMAND; Opinion Filed December 13, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01472-CV

### SAMUEL ADAM AFLALO, Appellant
### V.
### DEVIN LAMAR HARRIS AND MEGHAN THERESA HARRIS, Appellees

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-00247**

# EN BANC OPINION
Before the En Banc Court
Opinion by Justice Evans

On motion for rehearing en banc, we withdraw our panel and dissenting opinions and judgment of May 23, 2018, and concurring opinion in denial of panel rehearing of July 16, 2018. This en banc opinion is now the opinion of the Court.

Samuel Adam Aflalo contracted to sell his home to Devin Lamar Harris and Meghan Theresa Harris. Before the purchase closed, a dispute erupted because although Aflalo timely made property code section 5.008 disclosures on Texas Association of Realtors' form TAR-1406, he did not attach or deliver TAR-1414, which is not listed in the text of the parties' contract.[1]

---

[1] The contract provided a place for making other documents part of the contract by reference in the merger clause provision. Paragraph 22 provides, together with the first and only box the parties checked, as follows:

> AGREEMENT OF THE PARTIES: This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):
>
> ☑ Third Party Financing Addendum for Credit Approval

Aflalo sued the Harrises for the $10,000 escrow after the Harrises refused to close the sale. The trial court granted the Harrises' motion for summary judgment. A majority of a panel of this Court affirmed concluding that the contract required Aflalo to include TAR-1414 and the undisputed summary judgment evidence is that he did not do so; therefore he breached the parties' agreement.

After considering the issues in this appeal, including Aflalo's motion for rehearing, en banc, the Harrises' response, and Aflalo's reply, a majority of the Court concludes the texts of the contract and section 5.008 of the property code did not require Aflalo to deliver to the Harrises TAR-1414. Because the summary judgment evidence established that Aflalo made all the disclosures required by the contract and section 5.008 of the property code, we conclude Aflalo did not breach the contract. Accordingly, we reverse the judgment of the trial court in favor of the Harrises and remand the case for further proceedings for the following reasons.

## I. BACKGROUND

The parties agree the following facts pertinent to the core issue are undisputed. Aflalo and the Harrises executed their contract effective November 20, 2015, for the Harrises to buy Aflalo's house for $1.45 million escrowing $10,000 with a title company. Paragraph 7.B of the contract provided, "SELLER'S DISCLOSURE NOTICE PURSUANT TO 5.008, TEXAS PROPERTY CODE (Notice)." Under that provision, the parties skipped subparagraph (1) that provided, "Buyer has received the Notice," and instead they checked paragraph (2), which stated:

> ☑ **(2)** Buyer has not received the Notice. Within __3__ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

The contract provided for closing to occur on or before December 18, 2015.

On November 20, within the three-day contractually allotted time for Aflalo to make the property code section 5.008 disclosures, Aflalo delivered to the Harrises a disclosure notice using a fill-in-the-blanks-and-check-boxes, form TAR-1406. Underneath the title, "SELLER'S DISCLOSURE NOTICE," form TAR-1406 contains the statement, "This form complies with and contains additional disclosures which exceed the minimum disclosure required by [property code section 5.008]." Section 3 stated, "Are you (Seller) aware of any of the following conditions: (Mark Yes (Y) if you are aware and No (N) if you are not aware.)." Aflalo checked 'no' to "Located in 100-Year Floodplain." He checked 'yes' to "Located in Floodway." He checked 'yes' to "Present Flood Ins. Coverage." Following the instruction, "If the answer to any of the items in Section 3 is yes, explain (attach additional sheets if necessary)," Aflalo handwrote in the blank lines provided, "*I have flood insurance. My lender told me that it was recently added to a flood area. I made roof repairs several monts* [sic] *ago*."[2] Aflalo's explanation used two and one-half lines of the available four and one-quarter blank lines for explanation. Preprinted on form TAR-1406 underneath the words, "Present Flood Ins. Coverage," was the statement, "(If yes, attach TAR-1414)." Aflalo did not attach TAR-1414, nor did he deliver it at any time prior to producing documents to comply with the Harrises' discovery requests in this lawsuit.

On November 24, 2015, the day after the contractual deadline for Aflalo to deliver the disclosure notice, the Harrises requested Aflalo to deliver TAR-1414. Aflalo did not do so. The Harrises did not deliver a termination notice by November 27, 2015, the seventh day following Aflalo's delivery of his disclosures, nor by November 30, 2015, the tenth day after the effective date of the contract.[3] On December 17, 2015, the day before the scheduled closing and twenty-

---

[2] Aflalo also had checked 'yes' that he had roof repairs.

[3] In paragraph 23, the Harrises bought an option for $500 granting them "the unrestricted right to terminate this contract by giving notice of termination to Seller within 10 days after the effective date of this contract (Option Period)."

seven days after Aflalo's disclosures, the Harrises delivered a letter terminating the contract. After the Harrises failed to pay and close, Aflalo sued to recover the money in escrow claiming the Harrises breached the contract by failing to pay and close. The Harrises counterclaimed that Aflalo breached the contract by failing to complete and deliver TAR-1414 within the contractually allotted time, which was a condition precedent that excused their failure to close and entitled them to recover the money in escrow. Both parties moved for summary judgment, and the trial court granted summary judgment for the Harrises on the ground that Aflalo breached the contract and the Harrises were entitled to return of the money in escrow. A trial on attorney's fees was held, judgment was entered, and this appeal ensued.

## II. ANALYSIS

Aflalo asserts in his first issue that the trial court erred in granting the Harrises' motion for summary judgment and denying his motion for partial summary judgment on the breach issue when the trial court granted final judgment awarding the Harrises return of the money in escrow. To resolve Aflalo's issue, we must construe the parties' unambiguous contract and section 5.008 of the property code.

### A. Applicable Law

"We review a summary judgment de novo." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Id*. "In such a situation, we render the judgment as the trial court should have rendered." *Id*. But where a cross-motion for summary judgment is only a motion for partial summary judgment and does not seek final disposition of the claims in the trial court, the issue is not properly before us. *Pac. Mut. Life Ins. Co. v. Ernst & Young & Co.*, 10 S.W.3d 798, 810 (Tex. App.—Dallas 2000), *rev'd on other*

–4–

*grounds*, 51 S.W.3d 573 (Tex. 2001); *Montgomery v. Blue Cross & Blue Shield of Tex., Inc.*, 923 S.W.2d 147, 152 (Tex. App.—Austin 1996, writ denied) (en banc).

We review questions of statutory interpretation and contract construction de novo. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) (statutory interpretation reviewed de novo); *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015) (construction of unambiguous contract is reviewed de novo).

When parties dispute their contract's meaning,[4] "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). "In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *Matagorda Cty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) (quoting *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)); *see also URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 757 (Tex. 2018) ("[O]bjective, not subjective, intent controls, so the focus is on the words the parties chose to memorialize their agreement.") (internal quotation marks and footnote omitted); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010) (objective manifestation of intent is required, not "what one side or the other alleges they intended to say but did not."); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("[T]he parties' intent is governed by what they said, not by what they intended to say but did not"). For these reasons, we "presume parties intend what the words of their contract say," *Gilbert Texas Construction*, 327 S.W.3d at 126, and interpret contract language according to its "plain, ordinary, and generally accepted meaning" unless the instrument directs otherwise.

---

[4] The existence of a valid contract is one of the essential elements of a breach of contract claim. *See Kay v. N. Tex. Rod & Custom*, 109 S.W.3d 924, 927 (Tex. App.—Dallas 2003, no pet.) (setting out elements of breach of contract claim). Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. denied).

*Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "When examining an unambiguous contract, courts must construe the meaning of the language used in the contract. When the language is plain, it must be enforced *as written*." *Phillips v. Union Bankers Ins. Co.*, 812 S.W.2d 616, 618 (Tex. App.—Dallas 1991, no writ) (citing *Republic Nat'l Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex. 1963)).

We interpret statutes in context giving effect to every word, clause, and sentence, because every word or phrase is presumed to have been intentionally used with a meaning and a purpose. *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 893 (Tex. 2017); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); *Morton v. Nguyen*, 412 S.W.3d 506, 516 (Tex. 2013). When we must decide the meaning of a term not defined by the statute, we use the term's common, ordinary meaning, typically looking first to dictionary definitions, unless a contrary meaning is apparent from the statute's language. *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34–35 (Tex. 2017).

## B. TAR-1414 Compared to Section 5.008 Statutory Form

Aflalo made his disclosures on form TAR-1406, which states underneath its title, "This form complies with and contains additional disclosures which exceed the minimum disclosures required by" section 5.008 of the property code. As will be discussed at length later, form TAR-1406 directs attachment of TAR-1414 based on the disclosures Aflalo made. So we begin our analysis by comparing TAR-1414 to the statutory form in section 5.008(b) of the property code to determine whether TAR-1414 lacks substantial similarity to the statutory form and, therefore, is within the material that form TAR-1406 indicates "exceed[s] the minimum disclosures required." In summary, we conclude TAR-1414 contains generic information not specific to any property, is not substantially similar to the statutory form in section 5.008(b), and therefore TAR-1414 is within the material form TAR-1406 indicates "exceed[s] the minimum disclosures required."

–6–

TAR-1414 is titled, "INFORMATION ABOUT SPECIAL FLOOD HAZARD AREAS." At the top of every page, TAR-1414 has one blank to be filled in with the property address: "Information about Special Flood Hazard Areas concerning _____[Aflalo's address]_____." The only other blanks in TAR-1414 are for the signatures of the recipients to acknowledge receipt. There is no question or directive to the seller of property to disclose any property-specific information nor any check-box or blank line for any property-specific disclosure. The three-page document provides general information from the Texas Association of Realtors for buyers to consider. None of the information in TAR-1414 is specific to Aflalo's property or any particular property. The generality of the entire content of TAR-1414 is demonstrated by the first paragraphs of each section, although every paragraph would demonstrate the document's non-specific content:

A. FLOOD AREAS:

(1) The Federal Emergency Management Agency (FEMA) designates areas that have a high risk of flooding as special flood hazard areas.

. . . .

B. AVAILABILITY OF FLOOD INSURANCE:

(1) Generally, flood insurance is available regardless of whether the property is located in or out of a special flood hazard area. Contact your insurance agent to determine if any limitations or restrictions apply to the property in which you are interested.

. . . .

C. GROUND FLOOR REQUIREMENTS:

(1) Many homes in special flood hazard areas are built-up or are elevated. In elevated homes the ground floor typically lies below the base flood elevation and the first floor is elevated on piers, columns, posts, or piles. The base flood elevation is the highest level at which a flood is likely to occur as shown on flood insurance rate maps.

. . . .

D. COMPLIANCE:

(1) The above-referenced property may or may not comply with regulations affecting ground floor enclosures below the base flood elevation.

. . . .

E. ELEVATION CERTIFICATE:

The elevation certificate is an important tool in determining flood insurance rates. It is used to provide elevation information that is necessary to ensure compliance with floodplain management laws. To determine the proper insurance premium rate, insurers rely on an elevation certificate to certify building elevations at an acceptable level above flood map levels. If available in your area, it is recommended that you obtain an elevation certificate for the property as soon as possible to accurately determine future flood insurance rates.

(TAR-1414, §§ A.(1), B.(1), C.(1), D.(1), E.).

In addition to all the general information, TAR-1414 contains advice to buyers throughout its text. For example, section B.(1) advises buyers, "Contact your insurance agent to determine if any limitations or restrictions apply to the property in which you are interested." (TAR-1414, § B.(1)). Section B.(2) advises, "FEMA encourages every property owner to purchase flood insurance regardless of whether the property is in a high, moderate, or low risk flood area." (TAR-1414, § B.(2)). Section C.(3)(c) advises, "It is important for a buyer to determine if the first floor of a home is elevated at or above the base flood elevation. It is also important for a buyer to determine if the property lies in a floodway." (TAR-1414, § C.(3)(c)). And section E advises, "If available in your area, it is recommended that you obtain an elevation certificate for the property as soon as possible to accurately determine future flood insurance rates." (TAR-1414, § E). After the five sections and immediately above the blank lines for the recipients' signatures is the following advisory paragraph in bold font:

You are encouraged to: (1) inspect the property for all purposes, including compliance with any ground floor enclosure requirement; (2) review the flood insurance policy (costs and coverage) with your insurance agent; and (3) contact the building permitting authority if you have any questions about building requirements or compliance issues.

In summary, TAR-1414 is a document containing general information not specific to any property. It includes advice to buyers on many topics. The Texas Association of Realtors, who promulgated TAR-1414, filed an amicus brief in which it characterized TAR-1414 as a "generic informational form if the property is in a flood plain or if the seller maintained flood-insurance coverage." The Association further described TAR-1414 as "nothing specific to a particular property. Rather, it is generic information about flood zones. It encourages buyers to inspect and investigate the issue. It does not add any information about the specific property subject of a sale." The Association accurately describes TAR-1414.

The Harrises contend that TAR-1414 discloses important information about the subject property. They state,

> Aflalo's response provided no information relevant to the Property due to its flood insurance coverage, such as: (i) the flood area in which the Property is located; (ii) the availability of flood insurance; (iii) the requirements that the ground floor of the Property must meet; (iv) whether the Property is in compliance with such requirements; and (v) the availability of an elevation certificate. *See id*. All of this information is provided in a TAR-1414 form.

The Harrises are incorrect because TAR-1414 makes no property-specific disclosure about any of those matters, nor does it pose questions to a seller, such as Aflalo, to answer that would have disclosed that information. The only property-specific disclosures made by Aflalo were on form TAR-1406 that is discussed at length *infra*. For example, it was on form TAR-1406 that Aflalo disclosed to the Harrises that Aflalo's bank informed him the property was in a floodway; nothing in TAR-1414 disclosed "the flood area in which the Property is located" contrary to the Harrises' contention (i). The Harrises' contentions (ii) through (v) are equally erroneous.

The statutory form in section 5.008(b) is quite different from TAR-1414. The statutory form contains 110 separate blanks or check-boxes for answers to questions about different aspects of the specific property that is the subject of the disclosures. *See* TEX. PROP. CODE ANN. § 5.008(b). In addition, each of five sections of check-box disclosures is followed by directives to

explain any yes-answers in any check-box in the preceding section together with space provided for explanation. *See id.* By contrast, TAR-1414 contains no property-specific disclosure questions, check-boxes, blanks, or places for requested explanation. As noted above, TAR-1414 contains three pages of general information and advice not specific to any property. In accordance with the complete dissimilarity between TAR-1414 and the statutory form, no party has contended TAR-1414 is substantially similar to the statutory form in section 5.008, nor could they do so successfully. *See id.* § 5.008(a) (Supp.) (requiring seller to make disclosures using statutory form or substantially similar form). We, therefore, conclude TAR-1414 is not substantially similar to the statutory form in section 5.008(b) of the property code. TAR-1414 is, therefore, material within the ambit of the statement in form TAR-1406 that "exceed[s] the minimum disclosures required" by section 5.008 by directing attachment of TAR-1414 to form TAR-1406.

### C. Harrises' Motion for Partial Summary Judgment

In his brief, Aflalo challenges the partial summary judgment in favor of the Harrises. He argues TAR-1414 is nowhere referred to or incorporated into the contract. He is correct according to the text of the contract, including paragraph 22 that listed documents incorporated by reference but omitted TAR-1414. *See supra* n.1. Aflalo further argues TAR-1414 is not required by section 5.008 of the property code. Again, he is correct that nowhere in the text of section 5.008 is there a stated requirement for a seller to deliver TAR-1414 or state its contents.

Aflalo points out that he disclosed what section 5.008 of the property code required him to disclose: whether the property was "Located in 100-Year Floodplain" and whether he had "Present Flood Insurance." TEX. PROP. CODE ANN. § 5.008(b) (Supp.) (statutory form at ¶ 4). If he checked "yes" to either disclosure, section 5.008 instructed, "If the answer to any of the above is yes, explain (Attach additional sheets if necessary)." *Id.* Section 5.008 then provided three blank lines for explanation. *Id.* Aflalo asserts the disclosures he made on form TAR-1406 completely

satisfied the requirements of section 5.008. He inserted in his brief a picture of the disclosure he made showing his check-marks and explanations. So in addition to the minimum disclosures required by section 5.008, Aflalo disclosed the property was in a floodway (presumably one that flooded less frequently than every 100 years because he checked "no" to that question) and his lender had informed him the property had recently been added to a flood area. Aflalo contends these disclosures "completely satisfied the provisions of [section 5.008 of] the [Property] Code— and by extension, the Contract."

Aflalo argues the only mention of TAR-1414 is in the disclosure notice form he chose to use and that it is not part of the contract. Aflalo argues section 7.B.(2) of the contract specifically addresses the fact that the Harrises had not received Aflalo's disclosure notice at the time the contract was executed, because the parties checked paragraph 7.B.(2) which provides, "☑ (2) Buyer has not received the Notice." Because form TAR-1406 as completed by Aflalo was not exchanged information between the parties at the time of the contract, it was not a part of the contract when the parties entered into their contract. Indeed, as Aflalo argues, nowhere in the summary judgment record is there any document signed by both parties providing that Aflalo agreed to make disclosures required by, or use, TAR-1414. Aflalo summarizes his argument, "The summary judgment record does not contain any evidence, let alone explanation, as to how a reference to TAR-1414 on a Notice form delivered after execution of the Contract became a part of, or modified, the Contract."

In their brief, the Harrises attempt to meet Aflalo's challenge. They do not dispute the accuracy of the contractual provision that before signing the contract they had not received Aflalo's disclosure. But the Harrises emphasize the content of the form Aflalo chose to use to make his disclosure, form TAR-1406, provided "Present Flood Ins. Coverage (*If yes, attach TAR-1414*)." (Harrises' emphasis). From this, the Harrises argue, "Aflalo's self-selected Seller's Disclosure

–11–

Notice required that he attach the TAR-1414 form" and "as such, attaching the TAR-1414 form was required by the Contract." The Harrises make several arguments to support that conclusion.

First, the Harrises seek to elevate form TAR-1406's statement, "If yes, attach TAR-1414," to create a binding legal obligation on Aflalo's part by arguing, "In short, Aflalo assumed an *additional* obligation by choosing this Seller's Disclosure Notice form, and he must fully comply with the form he chose." (Emphasis added). Their argument, however, admits TAR-1414 was an additional obligation to Aflalo's contractual disclosure obligation, but the Harrises neither pleaded modification of contract, moved for summary judgment on modification, nor proved the requirements of modification.[5] In other words, the issue before the trial court was whether Aflalo failed to comply with the contract the parties mutually agreed to, not whether Aflalo failed to comply with form TAR-1406 by failing to deliver TAR-1414. The general cause of action is breach of contract, not breach of form.

Next, the Harrises make a contract formation argument that TAR-1414 was indeed required by the contract. They argue:

> In his Appellant's Brief, Aflalo makes the argument that there is nothing to indicate that the "reference to the TAR-1414 on a Notice form delivered after execution of the Contract became part of, or modified, the Contract." What Aflalo fails to mention is that he executed the Seller's Disclosure Notice (which required the

---

[5] There is no mention of contractual modification in the trial court record, and the Harrises never argued in the trial court or in their appellate brief that the reference in form TAR-1406 to TAR-1414 resulted in modification of the contract. In addition to the contract formation requirement of mutual agreement—*see supra* n.2—modification also requires consideration to be effective:

> Parties having the power to make a contract may modify their contract in any manner they choose. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). **The modification must be supported by new consideration**. *Rhoads Drilling Co. v. Allred*, 70 S.W.2d 576, 583 (Tex. 1934). Consideration is either a benefit that accrues to one party or a detriment incurred by the other party. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991).

*Grace Creek Dev., LP v. REM-K Builders, Ltd.*, No. 12-16-00184-CV, 2017 WL 2351523, at *4 (Tex. App.—Tyler May 31, 2017, pet. denied) (mem. op.) (emphasis added). Because the trial court granted the Harrises' motion for partial summary judgment and nowhere in the Harrises' motion do they raise modification as a ground for summary judgment, the trial court's judgment cannot be affirmed by treating form TAR-1406's reference to TAR-1414 as a modification of the real estate contract between the parties. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (Rule 166a(c) as amended in 1971 and 1977 "unequivocally restrict[s] the trial court's ruling to issues raised in the motion, response, and subsequent replies.")

TAR-1414 form to be attached) on September 16, 2015. That is, Aflalo executed the Seller's Disclosure Notice more than two (2) months before he entered into the Contract with the Harrises. This fact, and the fact that no other form of seller's disclosure notice has ever been produced by Aflalo, shows that the Seller's Disclosure Notice provided by Aflalo was the exact notice that Aflalo promised to supply by November 23, 2015, under the Contract. Aflalo cannot argue that this was not the notice he contemplated in the Contract when he prepared this Seller's Disclosure Notice for the express purpose of listing the Property for sale.

(Footnote citations to record omitted). This argument is seriously and fundamentally flawed because at its core it asserts one party's unexpressed thoughts and intentions are evidence of the mutual agreement of the parties. To the contrary, "[i]n the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *Burwell*, 189 S.W.3d at 740; *see also Gilbert Tex. Constr.*, 327 S.W.3d at 127; *Fiess*, 202 S.W.3d at 746. So, we construe contract language according to its "plain, ordinary, and generally accepted meaning" unless the instrument directs otherwise. *Heritage Res.*, 939 S.W.2d at 121. "When the language is plain, it must be enforced *as written*." *Phillips*, 812 S.W.2d at 618. The plain meaning of "SELLER'S DISCLOSURE NOTICE PURSUANT TO 5.008, TEXAS PROPERTY CODE (Notice)" is that section 5.008 of the property code, and not section 5.008 plus TAR-1414, is what Aflalo and the Harrises agreed Aflalo was obligated to disclose.

Finally, the Harrises argue section 5.008 of the property code required Aflalo to make additional disclosures of TAR-1414, that is, they assert Aflalo's failure to complete and deliver TAR-1414 violated section 5.008 of the property code and thereby breached the contract. The Harrises point out section 5.008 provides for minimum disclosures and permits disclosure to be made on "a written notice as prescribed by this section or a written notice substantially similar to the notice prescribed by this section." PROP. CODE § 5.008(a) (Supp.). Next, the Harrises point out that in the notice form provided in section 5.008(b) after a place to check "Present Flood Insurance Coverage," the disclosure notice states, "If the answer to any of the above is yes, explain. (Attach additional sheets if necessary)." *Id*. at § 5.008(b) (¶ 4 of statutory form). The Harrises

–13–

argue that form TAR-1406's statement, "If yes, attach TAR-1414," is substantially similar to section 5.008(b)'s, "If . . . yes, explain. (Attach additional sheets if necessary)." The Harrises conclude that, when Aflalo selected form TAR-1406 to make his disclosures, Aflalo was thereby obligated to complete and deliver TAR-1414 as a requirement of section 5.008 and thereby a requirement of the contract.

The Harrises' argument is incorrect both generally as to the substantial similarity argument and specifically when Aflalo's disclosures are considered. First, as pointed out above, the text of TAR-1406 clearly states it exceeds the statutory form and includes a directive to attach TAR-1414, which exceeds the statutory form in section 5.008(b). In his first amended petition and summary judgment response and affidavit, Aflalo pointed out this statement in form TAR-1406 arguing, "The Notice not only met the minimum required disclosures, it exceeded what was required to be disclosed under the Texas Property Code." In our analysis above we agreed with Aflalo's argument that form TAR-1406's directive to "attach TAR-1414" is one of the "additional disclosures which exceed the minimum disclosure required by" property code section 5.008. Nothing in the text of section 5.008 prohibits a seller from making additional disclosures, but nothing in the text imposes liability on a seller for failing to exceed section 5.008's disclosure requirements.

Second, normal statutory interpretation using dictionary meanings for undefined terms and the context of the statute require the conclusion that form TAR-1406's statement, "If yes, attach TAR-1414," is not substantially similar to section 5.008(b)'s, "If . . . yes, explain. (Attach additional sheets *if necessary*)." *See Melden & Hunt, Inc.*, 520 S.W.3d at 893; *Coleman*, 512 S.W.3d at 899; *Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 34–35. The imperative mood of the verb "attach" is used in both the statute and the form indicating a command. But the statutory text conditions its commands by the phrase, "if necessary." The

conjunctive, "if," functions to "introduc[e] a conditional clause; on the condition or supposition that; in the event that." *If*, NEW OXFORD AMERICAN DICTIONARY 865 (3d ed. 2010). The adjective, "necessary," means "required to be done, achieved, or present; needed; essential." *Necessary*, *id.* at 1171. So the statute commands "additional sheets" be attached only "in the event that they are needed." In addition, the immediate context of the statutory form provides three blank lines for explanation, further indicating the Legislature provided space for explanation thereby intending the condition, "if necessary," might not occur if a seller's disclosure explanation required fewer than three full lines. Finally, if the explanation will not fit in the allotted space, the statutory language directs attachment of "additional sheets" and does not specify any particular form. Because "additional sheets" is in the immediate context of three blank lines, the text means the seller should continue the explanation on additional blank sheets. So the clear and unambiguous text of the statute does not support the conclusion that the statute required Aflalo to complete and deliver TAR-1414.

The Harrises, using a novel method of statutory interpretation, argue the unconditional, mandatory language of form TAR-1406 removes the condition the Legislature inserted into section 5.008(b), "*if necessary.*" Specifically, they contend the two are substantially similar and therefore the unconditional mandate of TAR-1414 should be used to measure whether Aflalo complied with the statute. This argument is not a proper way to interpret an unambiguous statute, and we reject it. There is not a substantial similarity between section 5.008 and form TAR-1406 to the extent form TAR-1406 *requires* attachment of TAR-1414; the statute does not.

The dissenting opinion by Justice Boatright argues the verb "complete" in section 5.008(d) means that a seller is required to provide responses to the entirety of any form including portions of a disclosure form that exceed the minimum requirements of section 5.008(b). Section 5.008(d) provides,

–15–

> The notice shall be completed to the best of seller's belief and knowledge as of the date the notice is completed and signed by the seller. If the information required by the notice is unknown to the seller, the seller shall indicate that fact on the notice, and by that act is in compliance with this section.

The verb "complete" in the context of a form or questionnaire means, "write the required information on (a form or questionnaire)." *Complete*, NEW OXFORD AMERICAN DICTIONARY 355. The focus of subsection (d) is to require sellers to include both what they know and what they believe about the condition of their property when they "complete" "[t]he notice." *See id.* ("to the best of seller's belief and knowledge"). Section (d) requires a seller to complete "[t]he notice." That is a reference to "a written notice as prescribed by this section or a written notice substantially similar to the notice prescribed by this section" in subsection (a). *See* § 5.008(a). A form such as TAR-1406 that in its text alerts the user both that the form meets the requirements of section 5.008 and also exceeds section 5.008, is informing the user the form in part is substantially similar to section 5.008 and in part is dissimilar to it. A form that is not substantially similar to the statutory form is not "[t]he notice" referred to in subsection (d). Therefore, section 5.008(a), (b), and (d) do not require a seller to complete the parts of forms that are not substantially similar to the statutory form in subsection (b). We have already decided form TAR-1406 according to its text included parts that were not substantially similar to the statutory form in section 5.008(b) and that the requirement to attach TAR-1414 was one such non-substantially similar part—both the directive in form TAR-1406 and the content of TAR-1414. We conclude, therefore, Aflalo's disclosures on form TAR-1406 without attaching or ever delivering TAR-1414 did not violate section 5.008(d)'s mandate to complete "[t]he notice." We reject the dissenting opinion's view of section 5.008.[6]

---

[6] Hypothetically parties could use a single form that combined into one form a section 5.008(b) form with every form listed in paragraph 22 of the contract. Such an hypothetical All-In-One-Addendum-and-Disclosure Form would contain the subject matters included in Third Party Financing Addendum; Seller Financing Addendum; Addendum for Property Subject to Mandatory Membership in a Property; Owners Association Buyer's Temporary Residential Lease Loan Assumption Addendum; Addendum for Sale of Other Property by Buyer Addendum for Reservation of Oil, Gas and Other Minerals; Addendum for "Back-Up" Contract; Addendum Concerning Right to Terminate Due to

The difference between form TAR-1406 and section 5.008(b) is crucial. As a matter of law, Aflalo disclosed everything the text of section 5.008 required and, in addition, disclosed the property was "Located in Floodway" and explained, "I have flood insurance. My lender told me that it was recently added to a flood area." This information took Aflalo only two and one-half lines (he also included explanation about his roof; *see supra* n.3). So "additional sheets" were not necessary for Aflalo's explanation. And Aflalo's explanation was delivered within the contractually allotted time, providing the Harrises seven days to terminate the contract when they learned the home was in a flood plain and had flood insurance coverage required by a lender. Although the Harrises argue Aflalo's disclosures and explanation were inadequate, the only support they cite for their position is the additional information TAR-1414 would have required Aflalo to disclose. Merely because TAR-1406 directs attachment of TAR-1414's generic information and advice not specific to any property does not make Aflalo's disclosures insufficient to comply with the requirements of section 5.008, which is all the contract required. If the Legislature wanted to require disclosure of the information in TAR-1414, it could have stated that requirement in the text of the statute. Likewise, if the parties wanted to agree to require disclosure of whatever disclosures were required by a third party such as the Texas Association of Realtors, the parties could have agreed doing so was mandatory for performance of their contract. Or the parties could have listed TAR-1414 in the blank lines in their contract in paragraph 22. *See supra* n. 1. But the Harrises' post-contract, unilateral desire for the information in TAR-1414 does not make it part of the contract or Aflalo's non-delivery of TAR-1414 a breach of their contract. *See*

---

Lender's Appraisal; Addendum for Coastal Area Property Environmental Assessment, Threatened or Endangered Species and Wetlands; Addendum Seller's Temporary Residential Lease Short Sale Addendum; Addendum for Property Located Seaward of the Gulf Intracoastal Waterway; Addendum for Property in a Propane Gas System Service Area. According to the dissent, a seller's omission to "complete" one blank pertaining to any of the paragraph 22 documents—if combined into one form—even though not substantially similar to the statutory form in section 5.008(b) would violate section 5.008. Contrary to the dissent's view, section 5.008 requires the statutory form or a substantially similar form, not dissimilar forms and documents. *See* PROP. CODE § 5.008(a), (b) (Supp.).

*Gilbert Tex. Constr.*, 327 S.W.3d at 127; *Fiess*, 202 S.W.3d at 746; *Burwell*, 189 S.W.3d at 740; *Heritage Res.*, 939 S.W.2d at 121; *Phillips*, 812 S.W.2d at 618. Upon learning the home was in a flood plain and had flood insurance because a lender required it, the Harrises had all they bargained for: the contractually allotted period to terminate the contract and obtain return of their escrow money. The Harrises' arguments that section 5.008 required Aflalo to make disclosures on TAR-1414 are unavailing.

Having considered all of the parties' arguments,[7] we conclude that Aflalo established as a matter of law the contract did not require him to attach or deliver TAR-1414. He further demonstrated the disclosures he made did not breach the contract because they were in accordance with section 5.008(b) of the property code as required by the contract. Because that alleged failure was the Harrises' premise for their motion for summary judgment, the trial court erred when it granted summary judgment in the Harrises' favor.

### D. Aflalo's Motion for Partial Summary Judgment

Aflalo further argues in his first issue that the trial court erred when it denied his motion for partial summary judgment. But Aflalo's cross-motion for summary judgment is not properly before us because it is only a motion for partial summary judgment and does not seek final disposition of the claims in the trial court. *See Pac. Mut. Life Ins.*, 10 S.W.3d at 810; *Montgomery*, 923 S.W.2d at 152. Accordingly, we do not reach the second part of Aflalo's first issue.

---

[7] The Harrises' first section of their brief cites only their appendix for what the Harrises claim is an inconsistent judicial admission in a new and different lawsuit filed by Aflalo against his real estate agent. Apparently, after losing judgment to the Harrises because the trial court decided TAR-1414 became part of the parties' contract and Aflalo breached the contract by failing to deliver TAR-1414, Aflalo sued his real estate agent for not delivering TAR-1414. There are several problems with the Harrises' attempt to use Aflalo's new lawsuit. First, doing so treats the summary judgment record as though it is still open and the Harrises can supplement it. That is incorrect; it was closed at the time of the district court's ruling. Second, doing so treats the appellate record as though it, too, may be supplemented with material not presented to the trial court and not in the appellate record. "'An appendix is not a substitute for a clerk's record nor are citations to the appendix a substitute for citations to the record.'" *Jackson v. Citibank (S. D.), N.A.*, 345 S.W.3d 214, 214–15 (Tex. App.—Dallas 2011, no pet.) (quoting *Willms v. Wilson*, No. 05-08-01718-CV, 2009 WL 4283109, at *1 (Tex. App.—Dallas Dec. 2, 2009, no pet.) (mem. op.)). Accordingly, the Harrises' judicial admission argument presents nothing for our review. *See* TEX. R. APP. P. 38.1.

**E. Attorney's Fees**

In his second issue, Aflalo contends if he prevails on his first issue then we should reverse the trial court's judgment awarding $140,000 in attorney's fees plus appellate attorney's fees that resulted from the trial subsequent to the summary judgment. We agree. *See Probus Props. v. Kirby*, 200 S.W.3d 258, 265 (Tex. App.—Dallas 2006, pet. denied). The Harrises do not dispute this argument in their brief except to argue they should prevail on the first issue so they would still have a basis in law to recover attorney's fees. Having reversed the trial court's judgment and summary judgment in favor of the Harrises, we also reverse the award of attorney's fees to the Harrises.

### III. CONCLUSION

There is no basis in the law of contract or statutory interpretation to conclude Aflalo was obligated to attach or deliver TAR-1414 or that his failure to have done so violated section 5.008 of the property code or was a breach of contract. We therefore reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

/David Evans/
DAVID EVANS
JUSTICE

Schenck, J., concurring
Francis, J., dissenting joined by Wright, C.J., and Brown, J.
Boatright, J., dissenting

161472HF.P05

–19–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SAMUEL ADAM AFLALO, Appellant

No. 05-16-01472-CV     V.

DEVIN LAMAR HARRIS AND
MEGHAN THERESA HARRIS, Appellees

On Appeal from the 95th Judicial District
Ct, Dallas County, Texas
Trial Court Cause No. DC-16-00247.
Opinion delivered by Justice Evans, before
the Court sitting en banc.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Samuel Adam Aflalo recover his costs of this appeal from appellees Devin Lamar Harris and Meghan Theresa Harris.

Judgment entered this 13th day of December, 2018.